WILLIAM S. SLOAN, *et al.*, Appellants, *vs.* THE PACIFIC RAILROAD, Respondent.

1. *Legislature—What rights may and what may not be surrendered by—Taxation—Regulation of railroad rates.*—Private corporations, although established for public uses, are still entitled to the rights bestowed by their charters, unless inconsistent with that sovereign power with which the State cannot part. In the latter case, the renunciation, by the legislature, would be of no avail and not bind its successors. But the legislature may part with its right of taxation and *a fortiori* with its right to regulate rates upon a railroad.

2. *Railroads—Franchise—Laws, for general welfare, affecting—Exorbitant charges—Right of action for damages in case of—Power of legislature to regulate rates—Mo. Pac. R. R.—Act of 1872 invalid.*—The legislature may, at all times, regulate the exercise of a railroad franchise by general laws passed for the peace, good order, health, comfort and welfare of society; but it cannot, under the color of such laws, destroy or impair the franchise or any right or power essential to its beneficial exercise. And the power granted to a railroad company, to adjust its tariff of charges, is one essential to the enjoyment of its franchise. But, on the other hand regardless of legislation, the company will be responsible for its breach of duty as a common carrier in charging exorbitant freights or making unjust discriminations. A case in point is that of the Pacific Railroad of Missouri, which, under its original charter of 1849, and under the Act of 1868, had the power to regulate tolls until the year 1878; and the Act of 1872 (Adj. Sess. Acts 1872, p. 69) in attempting, meanwhile, to fix regulations in conflict with those of the company, was held invalid. One aggrieved by its charges, could have his damages in court. But the justice or injustice of the rates cannot be determined by the legislature.

*Appeal from Johnson County Circuit Court.*

*Rogers & White,* for Appellants.

I. The law impairs no provision of the contract. The word "rates" in § 12 of the Act of 1849 (Sess. Acts 1849, p. 219,) gives only the right to charge proportionate amounts. The word "toll" has the same meaning. (N. E. Express Co. vs. Me. C. R. R. Co., 57 Me., 188.) This contract confers no right upon the company with which this law comes in conflict.

1. The claim of defendant, that it is specially exempt from legislation in respect to its regulation of rates, is not in terms stated in the charter, and does not exist. (Providence Bank vs. Billings, 4 Pet.. 514; C. & N. W. R. R. Co. vs. Attorney General of Iowa U. S. Circuit Court, May, 1875 [not reported].

See exemptions from Taxes, Cool. Const. Lim., 127, 200, 281 and cases cited.)

2. Defendant, as a corporation, is a person and like a natural person, subject to general legislation. (1 Bouv. L. Dic., 318; Prov. B'k vs. Billings, 4 Pet. 514; Thorp vs. R. B. R. R., 27 Vt., 140; West Riv. Bridge vs. Dix, 6 How., 507; 2 Kent. Com., 291, 7 Ed.)

3. The common law obligations of common carriers is to make no unjust discriminations or unreasonable charges which this statute enforces. (N. E. Ex. Co. vs. Me. Cent. Railroad Co.. 57 Me., 188; McDuffee vs. P. R. R. Co., 52 N. H., 430; C. &. A. R. R. Co. vs. People, — Ill., —; Harris vs. Packwood, 3 Taunt., 264.)

4. Franchises are property, and, as such, subject to all such rules and regulations as the good of the community may require. (West Riv. Bridge vs. Dix, 6 How. 507; Dartmouth College vs. Woodward, 4 Wheat., 518; Charles River Bridge vs. Warren Bridge, 11 Pet., 420; R. F. & P. R. v. vs. Louiza, 13 How., 71; Turnpike Co. vs. State, 3 Wall., 210; The Binghampton Bridge Case, 3 Wall.. 51 [three Judges dissented]; Peters vs. St. L. & I. M. R. R., 23 Mo., 107.)

II. This law impairs no valid contract of the charter within the meaning of the Constitution.

1. Franchises are a branch of the king's prerogative, which belong to the State like other property, as a corporate body; and are granted by the legislature as agents of the State. As State agents the legislature cannot make a contract conveying away legislative power. (2 Blackst. Com., ch. 27; Cool. Const. Lim., 282, 525; Greenl. Cr., 67.)

2. The franchises of defendant belong directly to the members, or are held in trust for them as property. The fundamental obligation of every member of the community as the organic principle of civilized society, is that each person holds his rights of person and property subject to all needful regulations for the common good. There is, therefore, no power in the government to release any person or property from this obligation.

3. The clause of the Constitution as to laws impairing the obligation of contracts applies entirely to legislation concerning private rights depending upon contracts, and has no reference to legislation that has for its object the general good. (Dartmouth College vs. Woodward, 4 Wheat., 518, 6 How., 511, 27 Vt., 140, cited above ; Peters vs. St. L. & I. M. R. R., 23 Mo., 107 ; Gorman vs. Pacific R. R., 26 Mo., 441.) This law belongs to the class of general legislation known as a police regulation. (C. & N. W. R. R. vs. Fuller, 17 Wall., 560 ; C., B. & Q. R. R. Co. vs. Attorney General, before cited ; 2 Bill of Rights., § 1, Const. 1820 ; Phalen vs. Comm. Va., 8 How., 163.)

4. A railway franchise is an agency in the company to exercise a State function in operating a public highway. Defendant cannot make any discriminations in the beneficial use of the function. (Olcott vs. Board of Supervisors, 16 Wall., 678, Id., 673 ; Piqua Bank vs. Knoup, 1 Ohio St., 602, Id., 622 ; Cool. Const. Lim., 533.)

5. Defendant has, by its grant, the equivalent to the assessments and contributions to make and operate a highway belonging to the State as its tolls. These tolls must therefore be levied in the most just proportions. (Puffendorf, book 7, ch. 9, cases cited above.)

6. The right to regulate its toll, cannot be vested in defendant as a franchise, or as an incident to the franchise to take toll, or as a covenant annexed to that franchise. The right is simply legislative, when it affects the public interest.

7. The claim of the defendant is in conflict with the policy of our government, and is in conflict with sections 1, 2 and 20 of the Bill of Rights of the Constitution of 1820.

*James Baker, with J. N. Litton*, for Respondent.

I. The charter of defendant is a contract between the State and defendant, which cannot be altered· without defendant's consent. Said charter conferred on defendant the exclusive right and power to establish the rates to be charged and received by it for the transportation of freight and passengers

on its road, and the act in question, so far as it interferes with this right and power, is void. (See Adj. Sess. Acts 1868, p. 114, § 11; Pacific Railroad vs. Maguire, 20 Wall., 36; Wilmington Railroad vs. Reid, 13 Wall., 268; Bailey vs. Pac. R. R. [October term, 1874, not yet reported]; Miller vs. State, 15 Wall., 488; Binghampton Bridge Case, 3 Wall., 73; Home of the Friendless vs. Rowse, 8 Wall., 431; St. Louis vs. Boatm. Ins. & Tr. Co., 47 Mo., 155; State Freight Tax, 15 Wall., 277; Dane Co. vs. Smith, 13 Wis. 588; Phil., Wilm. & Balt. R. R. vs. Bower, 4 Houst. Del., 533; Cool. Const. Lim., 577; Pingrey vs. Washburne, 1 Aik., 268; Whiting vs. Sheboygan & Fond du Lac R. R., 25 Wis., 167; Att'y Gen'l vs. R. R., 35 Wis., 577; Id., 434; Cumb. Val. R. R. App., 62 Penn. St., 299.)

II. Common carriers, whether corporations or natural persons, must treat all persons alike under similar circumstances, and are prohibited from making unjust discriminations. But the question whether a discrimination is unjust or not, is a judicial question, and for the determination of courts, and not the legislature. (People ex rel. Kœrner vs. Ch. & Alt. R. R. 5 Chr. Leg. News, 297; 35 Wis. 589; State vs. Adams, 44 Mo., 573; St. Louis Co. Ct. vs Griswold, 58 Mo., 199; Abbott vs. Lindenbower, 42 Mo., 162; Comm. vs. Pro. New Bedf. Br., 6 Gray, 339; State vs. Noyes, 47 Me., 204.)

III. The discrimination complained of in this case, was reasonable and just, and was the result of a necessity, which could not be controlled by the defendant or the legislature. (Att'y Gen'l vs. Birm. & Derby Junct. R. W. Co., 2 Eng. R. W. Cases, 124; Oxlade's Case, 1 C. B. [N. S.]. 454; In re Caterham R. W. Co., 1 C. B. [N. S.], 410; In re Harris & Cocker Mouth R. W. Co., 3 C. F. [N. S.], 692; In re Jones & East. Counties R. W. Co., 3 C. B. [N. S.], 718; Hoyer vs. Caled. R. W. Co., Scotch Sess. Cas., vol. 17 [N. S.], 302; Strick vs. Swansea Canal Co., 16 C. B. [N. S.], 245; Baxendale vs. Lond. & S. West. R. W. Co., 1 L. R., Exch.,137.)

NAPTON, Judge, delivered the opinion of the court.

On the first day of April, 1872, the legislature of this State passed an act entitled "An act to prevent unjust discriminations and extortions in the rates to be charged by the different railroads in this State for the transportation of freights on said roads." The first section of this act is as follows:

"No railroad corporation organized or doing business in this State, under any act of incorporation or general law of this State, now in force or which may hereafter be enacted, shall directly or indirectly charge or collect for the transportation of goods, merchandise or property on its said road, for any distance, any larger or greater amount as toll or compensation than is at the same [time] charged or collected for the transportation of similar quantities of the same class of goods, merchandise or property over a greater distance upon the same road; nor shall such corporation charge different rates for receiving, handling or delivering freight at different points on its road, or roads connected therewith which it has a right to use; nor shall any such railroad corporation charge or collect for the transportation of goods, merchandize or property over any portion of its road a greater amount as toll or compensation than shall be charged or collected by it for the transportation of similar quantities of the same class of goods, merchandise or property, over any other portion of its road of equal distance; and all such rules, regulations or by-laws of any railroad corporation as fix, prescribe or establish any greater toll or compensation than is herein before prescribed, are hereby declared to be void."

The third section of this act prohibited any railroad company from increasing its rates of toll for transportation, &c., from one point to another, by reason of any decrease in its rates required by the first section, and declared that the rate of toll after the passage of the act should not be altered from what it was in the same month and day in the year, 1871.

The fourth section declared a forfeiture of one thousand dollars for any breach of this act, to be recovered by any person aggrieved.

This suit is for a violation of this act by the defendant, setting out thirty-one breaches of the act, and claiming $1,000 for each breach. In each count the allegation is that defendant charged and received a greater sum for transporting certain merchandise from St. Louis to Warrensburg than it charged for transporting the same class of freight in similar quantities from St. Louis to Kansas City, the distance from St. Louis to Kansas City being 63½ miles greater than from St. Louis to Warrensburg.

The defendant answered, admitting the facts charged, but asserting that under its charter, dated March 12, 1849, and an amendatory act passed March 1, 1851, and under the act of March 31, 1868, the right to regulate its rates of freight, etc., was left exclusively to defendant. The answer, moreover, alleges that the rates were reasonable, and that the discrepancy stated was owing to the competition which the road had to meet at Kansas City from other lines of railroad and from steamboats, and denies the validity of the act of 1872.

To this answer the plaintiff's demurred for various reasons:

1. Because the provisions of defendant's charter are not impaired by the act of 1872.

2. Because the charter of defendant does not authorize it to make any such regulation of freights as is provided against in the act of 1872.

3. Because the act of 1872 is a police regulation, authorized by the laws of the State and of the United States.

4. Because defendant's road is a public highway, and the act of 1872 is not void.

5. Because the charter of defendant does not exempt it from the operation of the law of April 1st, 1872, under which these proceedings were had.

The court overruled the demurrer, and the plaintiffs electing to stand thereon, a judgment for defendant was entered, and the case comes here by appeal.

The questions presented by this case have been discussed very elaborately and with great ability on each side; but we think the determination of the case depends on the single ques-

tion whether this act of 1872 is a valid act so far as the present defendant is concerned.

It is scarcely necessary to refer to the original charter of the defendant, because the act of the legislature of March 31st, 1868, under which the present company bought the road, is a change of the original charter. That act declared that "The said railroad company shall be subject to the provisions of the general laws of the State, now in force or hereafter to be enacted, classifying freights and fixing the regulation rates and charges for the transportation of freights and passengers by the railroad in this State; provided, that the provisions of this section, subjecting the Pacific Railroad to future legislation shall not take effect for ten years after the passage of this act."

This act undoubtedly recognizes the fact that previous to its passage, the Pacific Railroad was not subject to any regulations of the legislature, classifying freights or fixing the rates of transportation, but subjects the road to such legislative regulations after 1878.

The charter of this company had provided that the company "should determine the terms, conditions and manner in which merchandise, property and passengers should be transported thereon, and that such company should receive such tolls and freights as may be determined on by the directors, and should keep posted up statements of the rates of tolls and freights to be charged."

We hardly think it necessary to revert to the Dartmouth College case to justify the assertion that private corporations, although established for public uses, are still entitled to such rights as the legislature creating them has bestowed in their charter or acts of creation. If the rights so bestowed are inconsistent with, or embarrass the power which legislatures cannot part with, then such renunciation, by the legislatures, would be of no avail, and not bind their successors. It is not contended in this case, that a legislature may not part with its right of taxation—one of the most important attributes of sovereignty. The contrary has been asserted by the Supreme

Court of the United States, and its decisions have been acquiesced in. The right to regulate the tolls on a road, is a matter of inferior importance to the State, and if the right of taxation may be abandoned, it is difficult to perceive why the right of regulation of tolls may not be transferred to the corporation.

The power to regulate tolls is then granted to this defendant, not merely by its charter but by the act of 1868, under which defendant bought. This right, it is conceded, is subject to the inherent right of this State to make police regulations and to the common law right of every citizen to hold a common carrier responsible for every violation of the railroad company of its duty as a common carrier.

The act of 1872 undertakes to define the obligations of railroad companies, and to declare that a charge for one distance, if it exceeds a charge for a longer one, is an unjust discrimination. It may be so; but whether it is or not, is a question for the courts to decide and not the legislature. The act of 1872, declares that such discrimination is an unjust one, without regard to any circumstances whatever. In other words, the legislature, by this act, assume a power which the charter had originally granted to the company, and which the act of 1868 had continued to confide in the company for ten years after the passage of that act, and the only question is whether the act of 1868, under which this road is now held, is a valid act; for if it is, then, primarily, the defendant is invested with the power to fix its rates of freight and passage, subject to such police regulations as the State always retains power to make. This term, "police," is a very indefinite one. Perhaps Judge Cooley's definition may be considered as exact a one as we shall find: "Police regulations," says the author, "must have some reference to the comfort, safety or welfare of society; they must not be in conflict with any of the provisions of the charter; and they must not, under pretense of regulation, take from the corporation any of the essential rights and privileges which the charter confers. In short, they must be police regulations in fact, and not amendments of the charter or curtailment of the corporate franchise."

This subject was thoroughly examined in the Court of Errors and Appeals of the State of Delaware, in the case of the Philadelphia, W. & B. R. R. Co. vs. Bowers (4 Houston R., 506), a case very much like the present in all respects. In that case, it was held that the power of the company to adjust its tariff of charges by its own officers according to their views of the necessities of business and of justice to the public, having been confided in the franchise granted to the company without any reservation of legislative supervision or control, the legislature of the State had no right to assume control of such regulations, and undertake to fix, by law, different rates from what the company had fixed; that the power thus granted to the company was an essential one to the enjoyment of its franchise, and must be presumed to have been the consideration for which the corporators accepted the charter.. And in regard to the police power, it was held that the legislature may, at all times, regulate the exercise of the corporate franchise by general laws passed for the peace, good order, health, comfort and welfare of society, but that under the color of such laws it could not destroy or impair the franchise, nor any right or power essential to its beneficial exercise.

In this opinion of the Court of Appeals of Delaware, we heartily concur; it being understood that any citizen has the right, without regard to charters, and without any act of the legislature, to hold the company responsible for any breach of its duty as a common carrier, in charging exorbitant freights or tolls, or in making unjust discriminations.

The objection to the act of 1872 is, that the legislature undertook to pronounce certain discriminations unjust, made by the company. This the legislature had no power to do. The right to fix the tolls had been already confided to the defendant until the year 1878.

An arbitrary rule was adopted by the legislature determining that certain rates were unjust. Whether they were so or not, was a matter depending on circumstances, of which the legislature were not made judges. The liability of the de-

fendant at common law and on general principles not abrogated by the legislature, was a matter for the determination of courts of justice with the aid of juries. (New England Ex. Co. vs. Maine Cent. R. R. Co., 37 Me., — ; McDuffie vs. The Portland and R. Railroad, 52 N. H., 430 ; Att'y-Gen'l vs. R. R. Co., 35 Wis., 432.)

We are, therefore, all of opinion that the act of the legislature of April 1, 1872, was invalid, so far as it affects the defendant.

Judgment affirmed. The other judges concur.