The State ex rel. Haeussler v. Greer.

THE STATE *ex rel.* HAEUSSLER V. GREER, *Appellant*

1. **Retrospective Operation of Statutes and Constitutions:**
   ELECTION OF CORPORATION DIRECTORS. The intent to give a retro-
   spective operation to a law must be clearly expressed in order that
   it may receive such a construction; and this is equally as true of
   constitutional provisions as of statutes. So, where a legislative
   charter provided that directors of the corporation should be elected
   by vote of stockholders, allowing one vote for every share, and also
   provided that the legislature should ·have no power to alter, sus-
   pend or repeal the charter, and subsequently a constitutional pro-
   vision was adopted providing in general terms for cumulative voting
   at all elections of corporation directors; *Held,* that as there was
   nothing in this provision specially applicable to the corporation in
   question, and as there were other corporations in existence when
   the constitution was adopted to which it could apply, in addition
   to those which might thereafter be incorporated, it would be held
   not to operate upon this particular corporation.

2. **Laws Impairing Obligation of Contracts:** RIGHT TO VOTE AT
   CORPORATION ELECTIONS. The right of corporators to vote at elec-
   tions for directors, is a property right, and if the mode of voting is
   prescribed by an irrepealable charter, is protected by that provision
   of the constitution of the United States which prohibits the states
   from passing laws impairing the obligation of contracts, so that the
   State cannot interfere with it either by constitutional or legislative
   enactment.

3. **Police Regulations.** A law regulating the mode of voting at
   corporation elections, cannot be called a police regulation.

*Appeal from St. Louis Court of Appeals.*—Reported in 9
Mo. App. 219.

REVERSED.

*Finkelnburg & Rassieur* for appellant.

*Broadhead & Haeussler* for respondent.

HENRY, J.—This is a proceeding in the nature of a *quo
warranto* to determine whether Greer was duly elected a
director of the German Savings Institution on the 3rd day
of February, 1879, at a regular election for nine directors

for said corporation. The corporation was chartered by a special act of the legislature, approved February 24th, 1853, the 9th section of which is as follows: "The stock and affairs of the institution hereby established, shall be managed and conducted by nine directors, who shall be elected every second year, at such time and place in the city of St. Louis, as the board of directors for the time being shall appoint, and shall hold their office for two years, and until others be chosen, and no longer, and the election shall be held in such manner as said directors shall by ordinance or by-laws prescribe, and shall be made by ballot, by plurality of the stockholders, allowing one vote for every share; and stockholders not personally present may vote by proxy made in writing directly to the person representing them at such election. In case it should happen at any time that an election of directors should not be made on the day it ought to have been made, the corporation hereby established shall not, for that cause, be deemed to be dissolved, but it shall and may be lawful on any other day to make and hold an election of directors, in such manner as shall be regulated by the by-laws and ordinances of said corporation." By section 10 it was provided that the 7th section of the act of 1845, subjecting every charter thereafter granted by the legislature "to alteration, suspension and repeal in the discretion of the legislature," should not extend to this corporation.

On the 30th day of November, 1875, the present constitution went into effect, and the 6th section of article 12, provided as follows: "In all elections for directors or managers of any incorporated company, each shareholder shall have the right to cast as many votes in the aggregate as shall equal the number of shares so held by him or her in said company, multiplied by the number of directors or managers to be elected at such election; and each shareholder may cast the whole number of votes, either in person or by proxy, for one candidate, or distribute such votes

among two or more candidates; and such directors or managers shall not be elected in any other manner."

At the election in question, the relator, who owned 166 shares of the stock, offered to vote on the cumulative plan, under the constitution, by multiplying the number of his shares of stock by nine, the number of directors to be elected, and casting one-half of those votes (747) for himself as director. Three other stockholders, owning in the aggregate 380 shares of the stock, offered to vote their stock for relator in the same manner, which, added to relator's own votes, would have given him a total vote of 4,261, sufficient to elect him, while under the plan of voting one vote for each share he would have received but 540 votes, if all of his own stock and that of the other three stockholders had been cast for him. Greer received 8,327 votes cast in the manner provided by the charter of the institution, and the canvassers rejecting the votes cast for relator, declared Greer duly elected, and he was admitted as a director.

The following questions are involved: 1st, Was section 6, article 12 of the constitution intended to have a retrospective operation as to the charter of the German Savings Institution and other similar charters? 2nd, If so, had the convention which framed that constitution power under the constitution of the United States, to substitute the cumulative plan of voting the stock in the election of directors of that institution for the plan described by its charter?

A law will not be construed to be retrospective unless by its terms it is clearly intended to be so. "It is not enough that general terms are employed broad enough to cover past transactions," and "statutes are to be construed as prospective only if possible." These general propositions are fully sustained by the authorities cited by Mr. Sedgwick in his work on the construction of statutory and constitutional law, page 161. Our constitution forbids

1. RETROSPECTIVE OPERATION OF STATUTES AND CONSTITUTIONS: election of corporation directors.

the enactment of retrospective laws by the general assembly, and in such disfavor are such laws held and so generally are they condemned, that the intent to give a retrospective operation to a law must be clearly expressed in order that it may receive such a construction.

The language of the constitutional provision under consideration is broad enough to embrace all corporations, but there is no such clear expression of an intent that it should operate upon such corporations as had been previously incorporated with an express exemption from the operation of the general law by which the legislature was authorized to repeal, alter or suspend the charter of every corporation, as makes it necessary to give it that construction.

It was held in the *Trustees of Dartmouth College v. Woodward*, 4 Wheat. 518, that the charter of a private corporation constitutes a contract between the corporation and the state within the meaning of that clause of the constitution of the United States which declares that no state " shall pass any law impairing the obligation of contracts," and that doctrine has been adopted by this and the courts of most if not all the states of the union. *Sloan v. R. R. Co.*, 61 Mo. 30 ; *Scotland Co. v. R. R. Co.*, 65 Mo. 135. In the latter case it was contended that section 16 of article 11 of the constitution of 1865 operated to repeal a provision of defendant's charter exempting its property from taxation. That section of the constitution of 1865 reads as follows : " No property, real or personal, shall be exempt from taxation except such as shall be used exclusively for public schools, and such as may belong to the United States, this State, the counties or to municipal corporations in the State." The language of that section was broad enough to embrace the property of the defendant corporation as a subject of taxation, but the court, Judge Napton delivering the opinion, observed : " It is not now maintained by any judicial tribunal that a change in the political form of civil society has the magical effect of dissolving its moral

obligations or impairing contracts previously vested. Constitutional conventions, which are of frequent occurrence in many of our states, it is believed, have no more power over vested rights than ordinary legislatures. It must be remarked, however, that from well settled rules of construction this 16th section was evidently designed to be prospective and not retrospective in its operation, and it would be an unjust imputation on the convention which framed that constitution, to infer that they designed that section to operate upon existing rights."

The framers of our present constitution were aware of the doctrine announced by the Supreme Court of the United States in the *Dartmouth College case*, and that it had been adopted by the Supreme Court of this State in repeated adjudications, and in the language of Judge Napton, " it would be an unjust imputation on the convention which framed our present constitution, to infer that they designed that section to operate upon existing rights." The section under consideration does not more clearly in its terms embrace the German Savings Institution than did the language of section 16, article 2 of the constitution of 1865 embrace the property of all railroad corporations in the State; and there were other corporations in existence when the constitution of 1875 was adopted to which the 6th section of article 12 could apply, in addition to those which might thereafter be incorporated, so that full effect can be given to it without giving it a construction which would include charters of other corporations expressly exempt from alteration, suspension or repeal by the general assembly.

But conceding that the intention is manifest that it snould have the retrospective operation contended for, we

2. LAWS IMPAIRING OBLIGATION OF CONTRACTS: right to vote at corporation elections.

think it clear upon all the authorities, that if to be so construed, it is violative of that provision of the federal constitution which declares that: "No state shall pass any law impairing the obligation of contracts."

Speaking of the alleged change made by the constitu-

tion in the manner of voting the stock of the German Savings Institution, the St. Louis court of appeals says: "Unless it is admitted that the change proposed by the constitutional amendment would injuriously affect the actual value of stock in business corporations it is not easy to see the force of these arguments. If the value of the stock would not be so affected, the argument of the respondent would seem to resolve itself into a mere complaint that stockholders, situated as he is, are deprived of power, of the gratification of exercising control.".

The right which one has to control and manage his own property has a value beyond the mere "gratification of exercising control." A man might well hesitate to invest his means in an enterprise of which he had no voice in the management, when he would be willing to risk his capital in it if he had an equal control with others in the management of the business. If a constitutional provision had deprived the stockholders of all right to participate in the election of directors and authorized the governor or other official to appoint them, the argument of the court of appeals would have applied with equal force. In such a case it would make no difference in the right of the stockholders if by the change their interests were infinitely better secured. Their right to participate in the election of directors in the mode prescribed by the charter, cannot be interfered with, either by a constitution or legislative enactment on any such plea as that their interests will be better secured or promoted by the change. The right to manage and dispose of property is a property right, and a property right of substantial value.

In *Hays v. Com.*, 82 Pa. St. 523, speaking of the cumulative mode of voting stock as a substitute for the ordinary mode of voting it, the court said: "Now, whilst it cannot be said that this would not be an alteration in the terms of the charter, it is nevertheless urged that it is a mere regulation of the right of suffrage in corporations but affects the vested right of no one. But if it be not a vested right

in those who own the major part of the stock of the corporation, to elect if they see proper, every member of the board of directors, I would like to know what a vested right means." That case was similar to this, and we differ from the court of appeals with regard to the force and effect of that decision. We think it directly in point, and a careful examination of the authorities on this subject has satisfied us that to give the section of the constitution of 1875, under consideration, a retrospective operation as to the German Savings Institution, would render it so far void as in conflict with the provision of the constitution of the United States, which prohibits the several states from passing laws impairing the obligation of contracts. The constitutional convention, as we have seen, has no more power to violate vested rights than the legislature, and no general assembly succeeding that which granted this charter, could have interfered with the mode of voting the stock, which, it is contended, the constitution did. This corporation was expressly exempted from the operation of the general law of 1845, which authorized the legislature to alter, suspend or repeal the charter of every corporation thereafter granted by the legislature.

Nor can the section in question, with the construction placed upon it by relator, be upheld as a police regulation. 3. POLICE REGULATIONS. Bentham, in his general view of public offenses, defines the public police as follows: "Police is in general a system of precaution either for the prevention of crimes or of calamities." Police regulations are such provisions of law as are designed to protect the lives, limbs, health, comfort and quiet of citizens, and to secure them in the enjoyment of their property, and the police power can be invoked for an interference with one's dominion over his own property to prevent such use of it by him, or its continuance in such conditions as would be detrimental to the community, and on no other grounds. *Thorpe v. Rutland R. R. Co.*, 27 Vt. 140. "It is *prima facie* competent to any man to enjoy and deal with his own prop-

erty as he chooses. He must, however, so enjoy and use it as not to affect injuriously the rights of his fellow subjects." Broom's Legal Maxims, 394. In *Sloan v. Pacific R. R. Co.*, 61 Mo. 24, Judge Napton, speaking for the court, said: " This term, police, is a very indefinite one. Perhaps Judge Cooley's definition may be considered as exact a one as we shall find. 'Police regulations,' says the author, 'must have some reference to the comfort, safety or welfare of society; they must not be in conflict with any of the provisions of the charter; and they must not, under pretense of regulation, take from the corporation any of the essential rights and privileges, which the charter confers. In short, they must be police regulations in fact, and not amendments of the charter, or curtailment of the corporate franchise.' "

The respondent had a judgment in the circuit court, which, on appeal to the St. Louis court of appeals, was reversed and remanded, and our judgment is, that that of the court of appeals be reversed. All concur.