WILLIAM T. HART and Others, for Themselves and Other Income Bondholders, etc., Appellants, *v.* THE OGDENSBURG AND LAKE CHAMPLAIN RAILROAD COMPANY and THE CENTRAL VERMONT RAILROAD COMPANY, Respondents.

*Railroad income bonds are subject to the statutory right of railroad consolidation.*

The Ogdensburg and Lake Champlain Railroad Company, a New York corporation, in 1880, under an act of the Legislature of that year (Chap. 78), issued and sold income bonds, to which was attached a right to vote for directors, one vote for every $100 of bonds, and thereafter agreed with a connecting railroad company of the State of Vermont to consolidate with it, under the provisions of chapter 917 of the New York Laws of 1869 and its amendments. Thereupon certain owners of these income bonds brought an action to enjoin the consolidation, on the ground that it impaired the obligation of the contract between them and the Ogdensburg company, in that it would diminish the power of the directors for whom they were entitled to vote and that it did not provide for keeping separate accounts of the earnings of that company.

There was, however, no provision in the act under which the income bonds were issued, nor in the condition of the bonds themselves, against consolidation

under the act of 1869, in force at the time, and the consolidation agreement did provide for preserving the rights of all the creditors of, and liens upon, each corporation, and that each corporation should be deemed to continue in existence to preserve the same.

*Held,* that the obligations of the contract were not impaired by the consolidation; That the income bonds must be deemed to have been issued and taken by the purchasers thereof, subject to the contingency of consolidation and to the right of consolidation vested in the Ogdensburg company by the act of 1869, against the exercise of which right the purchaser of the bonds could not be heard to contend.

APPEAL by the plaintiffs, William T. Hart and others, from an order of the Supreme Court made at the Essex Special Term, and entered in the office of the clerk of St. Lawrence county on the 16th day of January, 1893, vacating and setting aside an order granting a preliminary injunction.

*Theodore H. Swift, William C. Loring* and *Charles O. Tappan,* for the appellants.

*Louis Hasbrouck, Daniel Magone* and *John. C. Keeler,* for the respondents.

MAYHAM, P. J.:

Appeal from an order made at Special Term vacating and setting aside an injunction order granted by a judge of this court restraining the defendant corporations from consolidating under the laws of New York.

The defendant, the Ogdensburg and Lake Champlain Railroad Company, is a corporation incorporated under the laws of New York, owning and operating a railroad with a capital stock of over $3,000,000.

The defendant, the Central Vermont Railroad Company, is a corporation organized under the laws of the State of Vermont, owning and operating a railroad in the State of Vermont, with a capital of $1,000,000. The railroads of these respective corporations connect with each other at the State lines, and together form a continuous line of railroad into both States.

In 1880 the defendant, the Ogdensburg and Lake Champlain Railroad Company, issued its income bonds to the amount of $1,000,000. These bonds, by their terms, bore annual interest at the rate of six per cent, payable semi-annually, provided that the

net earnings of the railroad company and other property of the company, after satisfying the expenses of operating and maintaining the same and the interest on all liens, charges, incumbrances and other indebtednesses, with all taxes and assessments and floating indebtedness on the property of or owned by said company, shall respectively suffice to pay such rate of interest on all of this issue of bonds outstanding at the time any installment of interest shall fall due or such interest less than six per cent per annum, as such net earnings shall be sufficient to pay upon such bonds, each being entitled to the ratable share thereof on presentment and surrender of the coupon representing the same, and that the board of directors of such railroad company shall determine the amount of such net earnings.

These bonds also provided that on the registration of the bonds by the holder thirty days previous to an election of directors, such holder may have one vote for each $100 of such bonds held by him for directors of said company.

The plaintiffs are holders, each in his own right, of some of these income bonds, and, as such owners and holders, are entitled to such privileges and immunities as are provided in such bonds to the holders thereof.

The Ogdensburg and Lake Champlain Railroad Company now propose to consolidate their railroad company with the Central Vermont Railroad Company, under the provisions of the statute which authorizes railroad companies, upon conditions therein provided, to consolidate, and preliminary to such consolidation entered into an agreement for consolidation with the directors of the Central Vermont Railroad Company.

By the terms of this agreement of consolidation the capital of the new consolidated company is $1,307,700, and the capital stock of each of the old companies is made convertible into the stock of the new company, ten shares of the Ogdensburg and Lake Champlain stock for one of the consolidated company, and that of the Central Vermont Company into such consolidated company stock — share for share.

The agreement provides for the naming of the directors of the new company and their election annually thereafter. The contract also provides for holding a meeting of the stockholders of each of

the old companies and the submission to them of the question of such proposed consolidation.

The contract also provides for the vesting in the new corporation of all the property and effects of each of the old corporations, but expressly provides that "the rights of all creditors of and liens upon the property of either of said corporations, parties to this agreement and act, shall be preserved and unimpaired, and the respective corporations shall be deemed to continue in existence to preserve the same, and all debts and liabilities incurred by either of said corporations shall thenceforth attach to such new corporation and be enforced against it and its property, to the same extent as if incurred or contracted by it."

It is insisted on the part of the plaintiff and appellants that this proposed consolidation, if carried into effect, would essentially impair the obligations of the contract between them and the Ogdensburg and Lake Champlain Railroad Company.

*First.* By depriving them as bondholders of the right to vote for those persons whose judgment as to the application of earnings is practically decisive of their rights to interest.

*Second.* By depriving them of directors who would have any motive to promote the interests of the plaintiff, and who from their position would be familiar with the facts and in whose selection they, as bondholders, have a right to participate.

*Third.* That the net earnings of the property of the company belong to the bondholders, and that by the article of consolidation no provision is made for keeping separate accounts, and no accounting is provided for, for the same.

*Fourth.* That the bondholders are deprived of their share in the extension of the business of the company.

If it be true that for any other objections suggested by the plaintiff the law authorizing the consolidation of these companies impairs the obligation of the contract between the Ogdensburg and Lake Champlain Railroad Company and these bondholders, then the contention of the plaintiff that the law is unconstitutional must prevail.

But there is no express provision in chapter 73 of the Laws of 1880, under which these bonds were issued, nor in the condition of the bonds themselves, against consolidation of the company with any other railroad company under the provisions of chapter 917 of the

Laws of 1869 and the amendments of the same, and as has, I think, been clearly shown in the very able and exhaustive opinion of the Special Term, these bonds must be deemed to have been issued and taken by the plaintiff, subject to the contingency which might occur by a consolidation. If, therefore, the right to consolidate existed at the time of the issuance and negotiation of these income bonds, the purchaser must be deemed to have taken them subject to that right, which vested in the company by the act of 1889, and which, like Aaron's rod, swallows up all the objections of the appellants, and against which they cannot now be heard to contend.

I think, therefore, that the order should be affirmed on the opinion of the Special Term, with costs and printing disbursements.

PUTNAM, J., concurred; HERRICK, J., dissented.

Order affirmed, with costs on opinion of Special Term.

The following is the opinion above referred to.:

KELLOGG, J.:

A motion is made herein by defendant to set aside an injunction granted on plaintiff's *ex parte* application.

On this motion no dispute exists as to the facts. The admissions of defendant's counsel and the moving and opposing papers present the case on its merits, and so far as plaintiffs are concerned in an aspect as favorable at least as they could be presented upon trial.

The sole question involved may be said to be one of construction of a contract — whether or not the defendant has obligated itself to the plaintiffs not to consolidate with any other railroad company as provided by the Laws of 1869, more recently amended.

By chapter 73 of the Laws of 1880, the Ogdensburg and Lake Champlain Railroad Company were authorized to issue $4,500,000 in bonds, to be used in the purchase, exchange or retirement of its prefered stock, and in payment of its outstanding bonds, and in making improvements to its property, and was authorized, with the consent of a majority of its stockholders, to secure such issue of bonds by a mortgage upon all its property, franchises, etc. It was further provided by this act that the bonds so issued should possess the anomalous quality of investing the holders with the right to vote "in the election of directors of said company," one vote for each $100 of bonds. This unusual power given to a bondholder, altering the voting power of the stockholder, and impairing his control over his own enterprise, must be interpreted to mean no more than it says, for this power is not confined to the bonds issued in exchange for preferred stock, and might be considered within *State* v. *Greer* (78 Mo. 188), as subject to attack by any non-consenting stockholder as unconstitutional. Clearly none of the rights of stockholders were intended to be disturbed,

except the right to vote for directors. Such rights as stockholders possessed respecting mortgages, loans, consolidations, etc., were left unimpaired by this law, and whatever was done under it must have been understood by the parties as subject to strict construction — the bondholders taking and the stockholders losing as little as strict construction permits.

Under this law bonds were issued of two classes, both secured by one mortgage, upon all the property and franchises of the company, aggregating in all the full amount of $4,500,000. The first class was called "first consolidated mortgage bonds,' aggregating $3,500,000. The second class was called "income mortgage bonds," aggregating $1,000,000. The interest upon the first class was payable periodically and absolutely. The interest on the second class, or "income bonds," was payable yearly out of the net earnings of that period, if sufficient; and if there were no net earnings during the year, then no interest was payable, and the board of directors of said company should determine the amount of such net earnings in each of such periods.

The principal of all the bonds was to be paid in forty years. The mortgage given with these bonds and for their security by the Ogdensburg and Lake Champlain Railroad Company is given : "Subject, however, to the right of the party of the first part (said company), its successors or assigns, to retain the free and uncontrolled use, enjoyment, possession, and management of the premises, rights and property hereby granted," so long as the principal and interest of the bonds of the first class, and the principal of the bonds of the second class, are paid according to their terms, no reference being made in the mortgage to the interest of the second class bonds.

The plaintiffs are owners of a portion of the second class or "income bonds," and are entitled to vote for directors of said company, one vote for each $100 of said bonds.

The income bond and mortgage provided for by the law referred to, and held by plaintiffs, constitute the contract between plaintiffs and the Ogdensburg and Lake Champlain Railroad Company, which plaintiffs allege is about to be violated to their irreparable injury by a vote of the stockholders, in ratification of an agreement of consolidation, entered into by and between the directors of the Ogdensburg and Lake Champlain Railroad Company and the Central Vermont Railroad Company, which two companies now own a continuous or connected line of railroad, and plaintiffs base their claim upon two grounds :

1. The projected consolidation, if consummated, will destroy their right to vote for directors in the Ogdensburg and Lake Champlain Railroad Company by working a practical dissolution of that corporation.

2. That consolidation will so mix and intermingle the properties and earnings of the two roads that it will be impossible to determine the net earnings which the bonds have a right to claim for interest.

Each of these two things, plaintiffs claim, the defendant has contracted shall not be done.

Without doubt the consolidation act, which was passed in 1869, and was in force when the law authorizing these bonds was enacted and when these bonds were issued, does contemplate that the directors of the old consolidating com-

panies shall, in the event of consolidation, be shorn of most of their functions; that the corporate body shall be reduced to a skeleton without rags and with very limited powers; but it does not contemplate its complete dissolution. It expressly says that the old corporation shall continue in existence to preserve the rights of all creditors, and the limit of such existence can be measured by the duration of creditors' rights. It is not quite plain, under this provision, how there can be valid objection to the annual election of directors for these old corporations, so long, at least, as there are in existence stockholders or bondholders capable of voting. I see none, and until the law points out a different method of exhibiting a tangible existence, the life of a corporate body, I think, must be shown in, and its functions, whatever they may be, must be discharged by a board of trustees or directors.

Justice GRAY, speaking of this consolidation act in *Polhemus* v. *F. R. R. Co.* (123 N. Y. 511), says: "The true theory of this act is that each consolidating company survives in the consolidated company, and that it represents each company in its claims and its obligations."

This is theoretically true, since the new company springs from the old; but this theory is not inconsistent with the existence, as the statute provides, of the old corporations distinct from the new, and with sufficient vitality to discharge in the ordinary way, through directors, the duties imposed by the law.

If the idea was contemplated and expressed in the bonds and mortgage, as plaintiffs now claim, that for forty years the directors of the Ogdensburg and Lake Champlain Railroad Company should exercise undiminished functions; that for this full term there should be no consolidation of interests with any other company, as the law at the time permitted, then the same idea must be expressed in the law of 1880 authorizing the issue of the bonds; for it is only by virtue of the provisions of that law that bondholders have the right to vote for directors. They are not given the right to vote on the question of consolidation. The law then conferred upon stockholders, not bondholders, the right to vote upon any agreement entered into by the directors. Can it be reasonably urged that the giving to a bondholder owning a $100 bond the right to vote for directors shows a manifest intention in the law to place it within the power of that bondholder to prevent consolidation for forty years, because in case of consolidation the directors he may vote for thereafter will have diminished functions? The law does not so declare; and if such power were conferred with the right to vote for directors, it must be implied. The implied rights which the bondholders take under this law, for the reasons before given, must be those only which necessarily go with the language used, interpreted in utmost strictness. And I see no reason here to conclude that the right to vote for directors meant anything more than to vote for such directors, with such powers as might be needed by the corporate body in its then or in any changed condition. There is no intention manifest in the law to deprive the stockholders of any rights which any existing law conferred upon them exclusively, even though the exercise of such rights should operate, directly or indirectly, to diminish the value of the bondholders' right to vote. Nor can it be reasonably claimed that the contract expressed by the bond and the accompanying mortgage contemplated or expressed upon this head more

than the law itself.  In case, then, the threatened consolidation is effected, the bondholders will possess still the right to vote for directors as now, during all the time that they are bondholders.  The directors will possess the powers and be burdened with duties as expressed in the consolidation act, and one of these duties will be that declared in the bond relating to the ascertainment of net earnings applicable to interest upon the income bonds.

If there had been any intention in the law or in the contract, evidenced by the bond and mortgage, to curtail the rights of stockholders, touching a step so important and possibly vital to their interests, as consolidation with connecting roads making a continuous line, I think that intention would have been clearly expressed.  It might be urged that by the same contract the corporation promised not to propose another mortgage upon their property and franchises, and the stockholders were not permitted to authorize a mortgage, since the mortgage might be foreclosed, the property and franchises sold, and the corporation dissolved, and in this method the plaintiffs might be deprived of their right to vote for directors.  Indeed, no indebtedness could be created by the company without risk that such debt might ripen into a judgment, and result in a judicial sale and dissolution of the corporate body.  And still, I think, no one will contend that these rights were by implication taken from the directors or the stockholders by this law or this contract.  All contracts are supposed to be made in view of the existing law, and must be interpreted to have been so made.  The statutory conditions must be deemed to have permeated the agreement and to have constituted elements in the obligation.  The contracting parties here knew of the provisions of the consolidation act.  They knew of the diminished powers of directors in case of consolidation.  They knew that no consolidation could be effected unless the board of directors first entered into an agreement to consolidate.  They knew their power through these bonds over the election of directors, and may have wisely or unwisely concluded that no consolidation could be had except the bondholders were friendly to it; or they may have concluded that no consolidation would be ever considered, except for the purpose of increasing the earnings and so benefiting bondholders.  So, also, they knew that only through this same board of directors, created by their votes, if their votes were so potent as to be of any value whatever, could any new mortgage or debt be created and the existence of the corporation be imperilled, or any leases be made, and they were content to exact nothing in express terms of the nature now contended for.  Referring to the right of the company under this contract to lease a road and pledge its earnings in payment in fact for its construction, the Court of Appeals in *Day et al.* (these plaintiffs) v. *O. & L. C. R. R. Co.* (107 N. Y. 146), uses this pertinent language: It is "the contention of the learned counsel  *  *  *  that the power of the company to change the condition of the road  *  *  *  is limited and restrained by these provisions.  It does not seem probable that such was the intention of the parties.  *  *  *  Uniformity is not bargained for nor promised.  If that was intended it is difficult to see why the bond and mortgage did not provide that the operations of the company during the forty years of credit should be confined to the running of its road between the then termini.  *  *  *

Nor do I think that the construction contended for is warranted by the words actually used, and that in acceding to that construction, the court below has inserted by implication that which the parties have not expressed."

And it was there held, in effect, that the company was in no manner restrained by this contract in doing what in the judgment of the directors was for the best ultimate interest of the road, even if the thing done resulted in the absorption of the entire earnings and left nothing to apply as interest on income bonds. While this may have little direct bearing upon the question of diminishing the power of plaintiffs' vote, it does bear upon the construction to be placed upon the contract respecting implied limitations therein upon pre-existing powers of directors and stockholders. If, upon reading the terms of plaintiffs' bond and mortgage, the Court of Appeals says, in substance: These parties, when this contract was entered into, knew that by the law of 1869, then in existence, that this corporation might lawfully agree with any other corporation for the use of its road, and if it had been intended to deprive this corporation of that power it should have been so plainly declared, the court below has erroneously inserted by implication that which the parties have not expressed, even though it is conceded that the exercise of this power will deprive plaintiffs of all interest on their bonds, why must not we also say : These parties, when this contract was entered into, knew by the terms of the consolidation act then in existence, that this corporation might lawfully unite with a connecting road, making a continuous line, and if it had been intended to deprive this corporation of that right it should have been so plainly declared. This deprivation of so valuable a right cannot be implied, even though it is conceded that its exercise will diminish the power of the directors for whom plaintiffs have a right to vote.

Considering, as the parties must, what the demands of forty years might be in the great progress of railroad enterprises, the changes which might be forced by competition and strife for business, considering, as said by Judge RUGER in *Woodruff* v. *Erie Railway Co.* (93 N. Y. 615), that : "The public policy of this State, as manifested by numerous acts of the Legislature, has always been, not only to afford the fullest scope for the consolidation and reorganization of non-competing railroads and railroad corporations, but, also, for the transfer of the use of such roads and their functions by one corporation to another." And considering the grave consequences to this corporation which might result in its being deprived of the privilege of uniting with any other road, is it likely that the parties intended to give each holder of a $100 bond the power to prevent such a union, when the interests of all concerned demanded it ? I think not. The implication, it seems to me, points to just the reverse.

The impossibility of ascertainment of the "net earnings" applicable to interest on the income bonds, which plaintiff claims will be the result of consolidation, and which constitutes the second ground of plaintiff's objection, calls for the examination of the proposed agreement.

The agreement of consolidation contemplates no change of stockholders ; a union of corporate interests ; a union of two roads ; forming a continuous line of railway under a single management. Neither the law nor the agreement suggests relief, directly or indirectly, from any existing liability or obligation. On

the contrary, by language unmistakable, the law and the agreement each fasten upon the new management every obligation, liability and duty which either of the consolidating companies has created or consented to by contract, express or implied.

The obvious purpose of union is the obtaining of increased "net earnings." Stockholders have interest in nothing else ; only out of net earnings can dividends be made. No question is made of good faith of directors in making the agreement, or of stockholders in their threatened ratification of it.

The income bondholders are also interested in "net earnings," and if the amount can be increased, certainly no harm can result to them from that. The only question is, can it be ascertained, if the two roads are run under one management, what proportion of net earnings properly belongs to each ?

Will it be possible under any plan or by any method which the new board of directors can devise, to determine the "net earnings" properly attributable to the Ogdensburg and Lake Champlain road and its properties ? If so, then there is nothing for plaintiffs to fear. For this is just what by the agreement the new company undertakes to do.

It is a matter of common knowledge that the earnings of a railroad company are mainly derived from freight and passenger traffic, which neither begins or ends with that particular road. Each road is but a link in a long chain; and though the entire line is made up of separate roads under separate corporate management, the earnings of each must, for the most part, be ascertained by arbitration or agreement with all roads in the line. Consolidation can have no effect to confuse the data by which the amount of such earnings is determined. Neither can it confuse the accurate data always accessible respecting local traffic (passenger or freight) over which each company has exclusive control. What then will necessarily prevent the ascertainment of the earnings of the separate properties ? The new company possesses the same data and means of determining which were possessed by the two old. The business being operated by one corporate body, instead of two, does not explain how confusion can be necessary. So far as the commingling of assets goes, it should be borne in mind that plaintiffs have no interest in such assets, only in their earnings, and that the proposed union of assets is upon a fixed basis which the agreement of consolidation determines. The union is upon a basis of valuation of the properties of the two consolidating companies, and has relation to earning capacity. It is presumed to be a fair valuation. No question is raised as to this. This is yet to pass the examination of the stockholders of the Ogdensburg and Lake Champlain Railroad Company, and it may be presumed that their personal interest will be sufficient to insure a fair ratio of valuation for the properties of this company. If the basis of union or ratio of valuation fixed by the agreement is right, then a division of earnings of the new company between the two old companies on that basis, or in that ratio, must be right; and no one interested in the earnings of the Ogdensburg and Lake Champlain Railroad Company can be injured. I see no practical difficulty in reaching a just and accurate division of earnings. Nor do I see how the plaintiffs can be injured in any respect as to their interests in such earnings.

The learned counsel for plaintiffs in support of this ground of contention, cites *Maine Central R. R. Co.* v. *Maine* (96 U. S. 499), but the case is hardly

authority for so much as is claimed here. It was there a question whether the parties in interest, as against the State, had not voluntarily abandoned a contract right to a certain mode of taxation, by taking on the new form of consolidation with five separate companies. That act made it impossible for the officers stipulated for in the law conferring this right, to make an annual report to the Legislature, which was to be the basis of taxation; and the court held that the State could not be compelled to accept a substituted service, and uses this language: "The new company was subject to no such duty of keeping an account of the expenditures and receipts of the original lines; its directors were not called upon to make any report as to the income of such lines, nor was its treasurer required to make any annual exhibit of the net profits derived from them."

This would have been sufficient to support the decision. The court, however, does use this further expression: "The assets of all the companies were intermingled; and continuous trains were run over the whole length of the several roads. It would have been impossible to show what would have been the profits of each road without the consolidation. Only an approximation to them would have been attainable; and that would have been based upon estimates more or less speculative in their character."

It is quite possible that the facts of that case and those roads may have been peculiar. It is not obvious how such conclusions could be reached in the case of the proposed agreement of consolidation now being considered. It is true the assets of the two old companies will be intermingled, but in the union each old company, through allotment of stock in the new company, will be accurately apportioned its proper fraction of the unit. It is also true that "continuous trains" may run over the whole length of the two roads, but if that has not been the practice in the past, and necessarily the practice, then from common knowledge we must say that these two roads must be an exception to the universal practice in railroading, where the two roads make a continuous line. As to the conclusions drawn by the court in that case from those two facts, if such conclusions are predicated on those facts alone, there must have been, it seems to me, something exceptionally confusing in the agreement of consolidation, or in the operations under it, which does not appear in the agreement we are considering. The State, in the case cited, did not seek to restrain the union of the several roads. It had granted certain immunities to two of them, and fixed the conditions upon which these immunities might be retained. The two companies voluntarily placed themselves in a position where it became impossible to perform the conditions in the manner by the law prescribed. No officers were in existence or could be brought into existence whose duty it was under the law to make the required report, and the court held that the State could not, without the passage of a new law, accept the report of a substitute, a stranger, upon whom no duty to report rested.

I think the plaintiffs, for the reasons stated, are not entitled to this restraining order, and direct that it be vacated, with costs.