CITY OF DETROIT v. DETROIT & HOWELL PLANK ROAD CO.

*Amendment of charters—Removal of toll-gates.*

A charter forbidding a turnpike corporation to erect toll-gates within city limits does not oblige them to remove gates brought within the limits by their subsequent extension.

The rights of a private corporation under its charter cannot be taken away as forfeited until there is a judicial finding of the forfeiture.

A legislature cannot bind its successors where the elements of contract, concession and consideration do not appear. A legislative provision in a particular statute that the act shall bind only those who assent to it, may limit the scope of that statute, but is void as to any subsequent act on the same subject.

Where the essential elements of a contract do not appear in a statute granting a franchise, the courts will not be astute in discovering contract obligations therein for the purpose of defeating later statutes on the same subject, but will solve all doubts in favor of the State.

The right of the Legislature to change the methods or the extent of taxation must always exist where there is no express contract to the contrary.

Municipal corporations are protected in their rights to property which they have lawfully acquired for local purposes, and cannot be deprived of it by the State.

Act 219 of 1879 requiring any plank road company to remove its toll-gate beyond municipal limits is invalid as taking property without due process of law.

The reserved right to amend the charter of a corporation will not authorize the Legislature to add requirements that would be inconsistent with constitutional principles, as by depriving it of its property without due process of law.

Courts must look beyond the particular case to the governing principle and be governed thereby regardless of special and temporary inconvenience.

MANDAMUS. Submitted January 20. Decided April 7.

City Counselor *F. A. Baker, E. F. Conely* and Attorney General *Otto Kirchner* for relator. The power to amend, alter or repeal a charter, reserved by the Constitution or by an express provision of the act, is a reservation to the State of its full legislative power, and legislative action thereon can be held void only because it is unconstitutional on other grounds, *Holyoke Co. v. Lyman* 15 Wal. 500; *Parker v. Metropolitan R. R. Co.* 109 Mass. 506; *Railroad Co. v. Georgia* 98 U. S. 359; *Tomlinson v. Jessup* 15 Wal. 454; *Fitchburg R. R. Co. v. Grand Junc. R. R. Co.* 4 Allen 198; *Mass. Gen. Hospital v. State Assur. Co.* 4 Gray 227; *Oldtown R. R. Co. v. Veazie* 39 Me. 581; *Schenectady P. R. Co. v. Thatcher* 11 N. Y. 102; *Buffalo v. Dudley* 14 N. Y. 336; *Northern R. R. Co. v. Miller* 10 Barb. 260; *Durfee v. Railway Co.* 5 Allen 230; *Joslyn v. Steamship Co.* 12 Abb. Pr. (N. S.) 329; *In re Lee & Co's Bank* 21 N. Y. 9; *Sherman v. Smith* 1 Black 587; *Anderson v. Com.* 18 Gratt. 295; *Miller v. State* 15 Wal. 478; *Pennsylvania College Cases* 13 Wal. 190; *Perrin v. Oliver* 1 Minn. 202; *Railroad Co. v. Greenbush* 5 Lans. 461; *Simpson County Court v. Arnold* 7 Bush 353; *Robinson v. Gardiner* 18 Gratt. 509; *Hyatt v. McMahon* 25 Barb. 457; *White v. R. R. Co.* 14 Barb. 559; *Iron City Bank v. Pittsburgh* 37 Penn. St. 340; *Com. v. R. R. Co.* 55 id. 452; *Bailey v. Power St. Church* 6 R. I. 491; *Zabriskie v.*

*Railroad Co.* 18 N. J. Eq. 178; acts of incorporation and other statutes derogating from the power of the State must be strictly construed, *Dugan v. Bridge Co.* 27 Penn. St. 303.

*Chas. A. Kent* and *G. V. N. Lothrop* for respondent.

COOLEY, J.   A mandamus is applied for in this case to compel the respondent to remove beyond the city limits a toll-gate located on Grand River street.   The questions the application presents are questions of statutory construction and of constitutional law.

The respondent was incorporated April 3, 1848, for the purpose of building and maintaining a plank road from the city of Detroit to the village of Howell, with certain specified branches.   The third section of the act of incorporation provided that the corporation " shall be subject to the provisions of an act entitled ' An act relative to plank roads,' approved March 13, 1848, except so far as otherwise provided in this act." The fifth section was as follows:   " This act shall be and remain in force for the term of sixty years from and after its passage;  but the Legislature may at any time alter, amend or repeal this act by a vote of two thirds of each branch thereof;  but such alteration, amendment or repeal shall not be made within thirty years of the passage of this act, unless it shall be made to appear to the Legislature that there has been a violation by the company of some of the provisions of this act: *Provided,* That after said thirty years, no alteration or reduction of the tolls of said company shall be made during its existence unless the yearly net profits of said company, over and above all expenses, shall exceed ten per cent on the capital stock invested, provided there be no violation of the charter of said company." Laws 1848, p. 398.

This act of incorporation was one of a considerable number passed by the same Legislature, all very short, and doing little beyond fixing the line of the proposed road, and the period of corporate existence, but referring for all other directions to the " Act relative to plank roads," subject to the provisions of which they were all made.   That act prescribed a method of organization,

enumerated the corporate powers and franchises, provided for an annual report to the Secretary of State, prescribed rates of toll, and limited the imposition of taxes. Laws 1848, p. 59.

Several sections of the general act of 1848 were amended in 1853, and several new sections were added. One of the new sections was as follows: "Any plank-road company, organized under the provisions of this act, shall be subject to the provisions of all amendments made or to be made thereto, whenever the assent of any such company, certified by the president and secretary thereof, to the provisions of such amendments, shall be filed in the office of the Secretary of State." Laws 1853, p. 69. The respondent filed its assent to these amendments, and no question is made of its being bound thereby.

In 1879 a further section was added to the general act of 1848 as follows: "No plank-road company organized subject to the provisions of this act, shall, without the consent of the local authorities, keep or maintain a toll-gate within the present or future corporate limits of any city, or village; and no such company shall collect toll for any portion of its road, within such limits, on which a pavement is maintained by such municipality. The assent of any such company to this amendment shall not be necessary in order to make this act applicable to such company. And if any plank-road company or companies in this State are, at the time of the passage of this act, maintaining any toll-gate within the present corporate limits of any city or village, said plank-road company or companies, are hereby required to discontinue and remove said toll-gate beyond the limits of said city or village, within sixty days after they are notified by the municipal authorities to so discontinue or remove the same." Public Laws 1879, p. 197.

It is upon this last amendment that the questions in this case arise. The toll-gate of the respondent on Grand River street is within the existing corporate limits of the city of Detroit, and the city authorities notified the respondent to discontinue and remove the same more than sixty days before this proceeding was instituted. The respondent denies the validity of the act of 1879, and refuses to conform to it. It is admitted that but for the act of 1879 respondent might lawfully maintain the

gate where it is, the city having been extended to embrace it since the gate was located. *Chope v. Detroit & Howell P. R. Co.* 37 Mich. 195.

The effect of this legislation, if valid, would be to take from respondent about two miles and a half of the road upon which it now collects toll. It is not pretended that this is done by reason of any forfeiture done or suffered by the respondent, and if it were, a judicial finding would be necessary. *Flint etc. Plank-Road Co. v. Woodhull* 25 Mich. 99. Nor is it claimed that the act of 1879 was passed as a regulation of police. It would probably be conceded that it goes quite beyond the competency of an act of mere regulation, and that it must be sustained, if at all, as an act passed in the exercise of that complete power to amend and repeal, which was reserved in passing both the general act of 1848 and the charter of respondent. The city relies upon it as an exercise of that power, and not otherwise.

The respondent claims that the act of 1879 is unconstitutional for many reasons; one which is especially relied upon being that it is inconsistent with the act of 1853, by one of the provisions of which subsequent amendments were to be binding on companies which were subject to the provisions of the general plank-road act, when they should file with the Secretary of State their assent thereto. That section, it is insisted, constitutes a contract between the State and the companies, prescribing while it stands the terms and the only terms on which companies can be bound by amendments, and is irrepealable except as to such companies as may assent. The city insists, on the other hand, that so long as a general power to amend and repeal is reserved, all amendments must themselves be amendable and repealable, and that inconsistent legislation does not repeal them.

If the act of 1879 in what it proposes to accomplish is fairly within the scope of any legitimate power to amend charters, the difficulty raised upon the act of 1853

would probably not be serious.  An examination of that act will show that its provisions were amendments for the ease and advantage of plank-road companies; enlarging their powers and capacities, decreasing the taxes to which they would be liable, extending the time within which they might complete their roads, relieving them of penalties, and so on, and that the consent of corporations thereto could not have been required by way of assent to onerous conditions as a consideration for favors conferred.  On the contrary, the State could have passed and enforced the act without the provision for assent, and that provision can only be understood as leaving it optional with companies to claim the benefits of the act of 1853 as their interests might seem to dictate.  But so far as that act undertook to limit the power to amend in the future—if it can be understood as having done so—it must have been wholly inoperative.  A legislative declaration embodied in a particular law, that it shall be binding only on those who may assent to it may limit the scope of that law, but a declaration that any future law on the same subject shall be thus restricted must be void.  *Bloomer v. Stolley* 5 McLean 158, 161; *Kellogg v. Oshkosh* 14 Wis. 623.  Legislators cannot thus bind the hands of their successors where the elements of contract, concession and consideration do not appear; and the doctrine that they may do so by contract is one so exceptional and so liable to abuses that courts will not be astute in discovering the existence of a contract between the State and those who claim franchises under it, where the essential elements of a contract are not manifest.  All questions of doubt are to be solved in favor of the State in such cases, and "to be in doubt is to be resolved."  *Pennsylvania R. R. Co. v. Canal Commissioners* 21 Penn. St. 22; *East Saginaw Salt Manfg. Co. v. East Saginaw* 19 Mich. 259; *Richmond etc. R. R. Co. v. Richmond* 26 Gratt. 83.

But leaving out of view the act of 1853, is the act of 1879 a legitimate exercise of the power to amend the

plank-road charters? It has been seen that in the case of this particular company it takes from it about two' miles and a half of its road, and this may be and probably is from the most profitable portion of it. That this diminishes essentially the value of the road is not to be doubted, though the extent is immaterial.

There are cases in which amendments to charters having some resemblance to this have been sustained, but it is in general easy to distinguish them. Many of these are cited in the brief for the relator. *Commissioners v. Holyoke Co.* 104 Mass. 446, in which a company having a dam across the Connecticut river was required to construct a fish-way, was a case involving a mere police regulation for the preservation of rights of others in the fishery above and below. All the following cases involved the same principle: *Commonwealth v. Eastern R. R. Co.* 103 Mass. 254, where a railroad company was required to build a station house and stop its trains at a certain locality; *Albany etc. R. R. Co. v. Brownell* 24 N. Y. 345, in which it was held competent to require a railroad company to permit and provide for the crossing of its track by highways; *Roxbury v. Boston R. R. Co.* 6 Cush. 424, in which a like question was involved; *English v. New Haven etc. Co.* 32 Conn. 240, in which a bridge, made necessary for the convenience of a railroad company, and used by the company and the public, was required to be made wider by the company; *Worcester v. Norwich etc. R. R. Co.* 109 Mass. 103, in which the railroads coming into a city were required to unite in a common passenger station at a point to be determined by commissioners; *Meadow Dam Co. v. Gray* 30 Me. 547, in which a company incorporated to build a dam across a river was required to construct a lock for purposes of navigation; and there are many others of the same sort. Cases involving only the right to change the methods or the extent of taxation, may be dismissed altogether from consideration, as this right must always exist when there is no express contract to the contrary. *East Saginaw Salt*

*Manfg. Co. v. East Saginaw* 13 Wall. 373.  So may cases involving only the question of the liability of corporations to the control of the general police laws of the State.  *Beer Company v. Massachusetts* 97 U. S. 25; *Fertilizing Company v. Hyde Park* id. 659.

But there is no well considered case in which it has been held that a legislature, under its power to amend a charter, might take from the corporation any of its substantial property or property rights.  In some cases the power has been denied where the interest involved seemed insignificant.  The case of *Albany etc. R. R. Co. v. Brownell* 24 N. Y. 345 is an illustration.  It was there decided that although the legislature might require railroad companies to suffer highways to cross their tracks, they could not subject the lands which the companies had acquired for other purposes, to the same burden except in connection with provision for compensation.  The decision was in accord with that in *Commonwealth v. Essex Co.* 13 Gray 239, 253, in which, while the power to alter, amend or repeal the corporate franchises was sustained, it was at the same time declared that "no amendment or alteration of the charter can take away the property or rights which have become vested under a legitimate exercise of the powers granted."  The same doctrine is clearly asserted and affirmed in *Railroad Company v. Maine* 96 U. S. 499, and is assumed to be unquestionable in the several opinions delivered in the *Sinking Fund Cases,* 99 U. S. 700.

But for the provision in the Constitution of the United States which forbids impairing the obligation of contracts, the power to amend and repeal corporate charters would be ample without being expressly reserved.  The reservation of the right leaves the State where any sovereignty would be if unrestrained by express constitutional limitations, and with the powers which it would then possess.  It might therefore do what it would be admissible for any constitutional government to do when not thus restrained, but it could not do what would be inconsistent with constitutional principles.  And it can-

not be necessary at this day to enter upon a discussion in denial of the right of the government to take from either individuals or corporations any property which they may rightfully have acquired. In the most arbitrary times such an act was recognized as pure tyranny, and it has been forbidden in England ever since *Magna Charta*, and in this country always. It is immaterial in what way the property was lawfully acquired; whether by labor in the ordinary avocations of life, by gift or descent, or by making profitable use of a franchise granted by the State: it is enough that it has become private property, and it is then protected by the "law of the land." Even municipal corporations, though their charters are in no sense contracts, are protected by the Constitution in the property they rightfully acquire for local purposes, and the State cannot despoil them of it. *Terrett v. Taylor* 9 Cr. 43; *Pawlet v. Clark* 9 Cr. 292; *State v. Haben* 22 Wis. 660; *People v. Common Council* 28 Mich. 228.

We have said nothing of those cases in which charters have been amended by limiting the tolls that may be taken, as it is conceded by relator that that is not what has been attempted in this case. It was a part of the original contract that the tolls should not be reduced by the State until the annual returns should realize to the stockholders ten per centum annually on their investment, and it is not claimed that that limit has been reached. What the State claims a right to do is to deprive the respondent of the privilege any longer to take tolls for travel and traffic on two miles and a half of its road. If it may do this in respect to one part of the road, it may in respect to any other part. If it may exclude the respondent from Detroit, it may from Howell also, or from any township on the line, and a single section of a statute may annihilate the property of respondent altogether. A statute which could have this effect would not be a statute to amend franchises, but a statute to confiscate property; it would not be a statute of regulation, but of spoliation.

It may be that what the Legislature of 1879 proposed to accomplish would in itself work no hardship to respondent, and would be highly desirable to the city; but the principle violated is the fundamental principle that underlies all property; and the first successful inroad upon it that obtains judicial sanction may be a precedent that shall let in innumerable evils.  Courts must look beyond the particular case to the governing principle, and be governed by that, regardless of temporary and special inconveniences.  But even such inconveniences must be trivial, since the power to appropriate private property to public uses is always ample and always at command.

It results, from what has above been said, that the mandamus must be denied.

The other Justices concurred.