SMITH v. ATCHISON, T. & S. F. R. CO. et al.

(Circuit Court, D. Kansas, First Division. November 5, 1894.)

No. 7,154.

1. CONSTITUTIONAL LAW — OBLIGATION OF CONTRACTS — AMENDMENT OF CHARTER — TERRITORIAL AND STATE GOVERNMENTS.

The charter of the defendant railroad corporation, granted in 1859, by a special act of the legislature of the territory of Kansas, provided

that, in elections of directors, each shareholder should have one vote for each share of stock held by him. The constitution of the state of Kansas, assented to by congress on the admission of that state, provides that all laws in force in the territory at the time of the acceptance of the constitution, not inconsistent with it, shall continue in force. It also provides (article 12, § 1) that the legislature shall pass no special act conferring corporate powers; that corporations may be created under general laws, but such laws may be amended or repealed; but it declares that all rights arising under the territorial government shall continue. The legislature of the state of Kansas, by an act passed in 1876, and amended in 1881, provided that, in all elections of directors of any incorporated company, each stockholder might cast for any one candidate as many votes as he held shares of stock, multiplied by the number of directors to be elected. *Held,* that no power was acquired by the legislature of the state, through the provisions of the constitution and its acceptance by congress, to amend the charter of defendant without its consent, and that the last-mentioned statute, accordingly, did not apply to its elections.

**2.** SAME—METHOD OF VOTING ON STOCK.

*Held,* further, that the right to amend the defendant's charter in this respect was not reserved to the territory by an act passed before the charter, and providing that any charter thereafter granted might be amended, provided such amendment should not conflict with any right vested by the charter; since the right of each shareholder to cast one vote for each share is a vested right.

**3.** SAME—ASSENT OF CORPORATION.

*Held,* further, that the corporation had not assented to or accepted the provisions of the act for cumulative voting by accepting and acting under sundry statutes providing that any railroad corporation should have certain rights, etc., but imposing no terms or conditions indicating an intention to abrogate rights or privileges already existing.

Bill by William Palmer Smith against the Atchison, Topeka & Sante Fé Railroad Company, and Edward Wilder and others, stockholders in that corporation. On motion for preliminary injunction.

B. F. Tracy, A. L. Williams, Henry Wollman, and M. Summerfield, for complainant.

A. A. Hurd, Robert Dunlap, and Gleed, Ware & Gleed, for defendants.

FOSTER, District Judge. The complainant brings his bill to this court, praying that the defendants be enjoined from preventing or interfering with the exercise by the complainant of certain alleged rights as a stockholder of the Atchison, Topeka & Santa Fé Railroad Company. He charges in his bill that the defendants are stockholders in said company, and, having control of the annual meeting of the stockholders for the election of directors, have combined together to prevent him from casting, and the meeting from allowing and counting, his votes as such stockholder, under the provisions of the statutes of Kansas of 1876, amended in 1881, known as the "Cumulative System." The statute reads as follows:

"In all elections for directors or trustees of any incorporated company, each shareholder shall have the right to cast as many votes in the aggregate as shall equal the number of shares so held by him or her in said company, multiplied by the number of directors or trustees to be elected at such election, and each shareholder may cast the whole number of votes either in person or by proxy for one candidate, and such directors or managers shall not be elected in any other manner." Laws 1881, p. 131.

Since the nonresident defendants have been dismissed from this case, and the proof submitted, there is some doubt whether we should proceed further, in view of the facts touching the purpose and power of these defendants to do the acts complained of; but inasmuch as it is apparent that defendants hold a different view of the law as to plaintiff's rights in this matter, and, as far as they may have the power to do so at said meeting, will ignore his claim to proceed under said act of the legislature in electing directors, and as a full and able discussion of the law of the case has been had, it is proper that we should consider and determine the legal issues involved. The importance to the defendant corporation, to the stockholders, and, incidentally, to the people of the state, of the final outcome of this issue, must be apparent; for, although its property is now in the charge of this court by its receivers, and the power of its officers and directors is at present unimportant, it must sooner or later be turned over to its owners, whoever they may be, to be managed and operated under the provisions of its charter. From its humble origin as a corporation chartered to construct a railroad from Atchison to Topeka, with a capital stock of $1,500,000, it has grown to be probably the greatest aggregation of railway management, under one system, in the world, extending across the continent, from the northern lakes to the Gulf of Mexico on the south, and to the Pacific Ocean on the west, and embracing over 9,000 miles of railway, with a corporate capital stock of over $100,000,000. Neither party to this controversy questions the validity of the original charter granted to the defendant company by the legislature of the territory of Kansas in February, 1859; but the complainant says that the original charter, granting special powers and privileges, has been so modified by subsequent legislation and action of the company itself that it is now governed by the general laws of the state of Kansas touching railroad corporations. This the defendants deny. Complainant contends that the congress of the United States has absolute sovereignty over the legislature of a territory; that it is the creature of congress, and subject to its arbitrary will in all matters of legislation; that it may modify, change, or reject in toto any or all the legislation of such territory. Late Corporation of the Church of Jesus Christ of Latter-Day Saints v. U. S., 136 U. S. 1–44, 10 Sup. Ct. 792.

Counsel further contend that this power of congress was exercised when it admitted Kansas into the Union as a state, and that it assented to the constitution of the new state by admitting it into the Union under that constitution.

Section 4 of the schedule of the constitution reads as follows:

"Sec. 4. All laws and parts of laws in force in the territory at the time of the acceptance of this constitution by congress not inconsistent with this constitution, shall continue and remain in full force until they expire or shall be repealed."

It is therefore urged that every law of the territory in existence at the time of the admission of the state of Kansas, inconsistent with the provisions of the constitution of the state, was repealed by

the act of admission, and that every provision of every law inconsistent with such constitution, modified so far as was necessary to place the provision of the law in harmony with the constitution, and, as modified, such laws must continue and remain in full force until they expire or shall be repealed.

Section 1 of article 12 of the constitution reads as follows:

"The legislature shall pass no special act conferring corporate powers. Corporations may be created under general laws, but all such laws may be amended or repealed."

It is insisted that if, at the time of the admission of Kansas, there was any law upon its statute book creating corporations, which provided that the legislature should have no power to amend or repeal that act, such provision would be inconsistent with the constitution, and the act would, from the time of the admission of the state, be subject to the power of the legislature to modify or repeal such charter. It seems to me this is not the proper interpretation of the intent and meaning of the constitution.

Section 1 of the schedule provides as follows:

"That no inconvenience may arise from the change from a territorial government to a permanent state government, it is declared by this constitution that all suits, rights, actions, prosecutions, recognizances, contracts, judgments and claims, both as respects individuals, and bodies corporate, shall continue as if no change had taken place."

This section saves to bodies corporate all rights and contracts granted by the territorial government, and it is apparent that section 1 of article 12 of the constitution was intended to limit and define the powers of the state legislature, and is altogether prospective in its operation. That the powers and privileges given by corporate charters become vested rights and contract obligations has been decided so often that it is no longer a debatable question. Commencing with the Dartmouth College Case, in 4 Wheat. 518, there is a uniform line of decisions on that subject down to the present day. Farrington v. Tennessee, 95 U. S. 685; Edwards v. Kearney, 96 U. S. 595; Hays v. Com., 82 Pa. St. 522; State v. Greer, 78 Mo. 188; Pierce v. Com., 104 Pa. St. 150; Wright v. Water Co., 67 Cal. 532, 8 Pac. 70; Baker's Appeal, 109 Pa. St. 461; Railroad Co. v. Duncan, 111 Pa. St. 361, 5 Atl. 742; Com. v. Philadelphia & E. R. Co. (Pa. Sup.) 30 Atl. 145.

Referring to the charter, we find the following provisions:

"Sec. 5. The capital stock of this corporation shall be one million, five hundred thousand dollars, which may be increased from time to time to any sum not exceeding the amount expended on account of said road, divided into shares of one hundred dollars each, which shall be deemed personal property, issued and transferred as may be ordered by the directors or by laws of said company.

"Sec. 6. All the corporate powers of said company shall be vested in and exercised by a board of directors and such officers and agents as they may appoint. The board of directors shall consist of thirteen persons, stockholders, three of whom, at least, shall be residents of Kansas, who shall be chosen annually, by the stockholders, each share having one vote by person or proxy, and continue in office until their successors are elected and qualified; vacancies in the board may be filled by a vote of two-thirds of the remaining directors."

It will be observed that each share of stock shall have one vote in the election of directors. It was decided in Hayes v. Com., supra, that such a provision meant one vote for each director to be chosen, and was noncumulative, and that it was a vested property right. To the same effect is State v. Greer, supra; State v. Stockley, 45 Ohio St. 304, 13 N. E. 279; Pierce v. Com., 104 Pa. St. 150.

We may admit that there is a recognition and consent by congress, in section 4 of the schedule, that the state legislature may repeal any and all territorial laws it may choose, and that this power includes the lesser power to modify or change, but that consent could have no force or effect against any act that neither the territorial legislature nor congress itself could modify or repeal; and there is no power reserved in this charter to any legislative body to modify or repeal any provision of the act. Such power, therefore, could not pass to the state, unless it may be found in some other law of the territory, for the state took the territorial statutes as it found them. In the territorial laws of 1855 (chapter 28) we find the following:

"Sec. 7. The charter of every corporation that shall hereafter be granted by law, shall be subject to alteration, suspension or repeal by any succeeding legislature; provided, such alteration, suspension or repeal shall, in nowise conflict with any right vested in such corporation by its charter."

Whether or not this act was in force at the time the defendant's charter was granted it is not necessary to decide, as the proviso in this section has extracted the meat, and left only the shell. It seems to me it would puzzle the most astute legal mind, in the light of the adjudicated cases touching vested charter rights, to find anything of substance herein reserved for legislative action. Certain it is that the right to vote capital stock on the noncumulative plan has been repeatedly decided to be a vested property right, and that is sufficient for this case, and brings it under the proviso of the act. It must therefore be conceded that this corporation may stand on its chartered rights, unless it has lost or given them away by some act of its own. And it is further alleged by the complainant that the company has lost these special rights by voluntarily accepting legislation of the state, and thereby brought itself under the provisions of the general laws governing railroad corporations. The following acts are specially cited by complainant's counsel: The name was changed to the Atchison, Topeka & Santa Fé Railroad Company under section 3 of the act of 1862 (chapter 170). That law gave the right to the stockholders of any railroad company organized, or which might thereafter organize, under the laws of the state or territory of Kansas, to change its corporate name, etc. Section 2 of the same act gave to any such railroad company the right to construct and operate along its route a line of telegraph, etc., with all the rights given to any telegraph company under the laws of the state or territory of Kansas. The act of 1864 (chapter 79) granted congressional lands to said company as it should construct its road. The law of 1868 (section 25) gives the right to any corporation heretofore organized, and now in existence, under any general or special law of the territory or state of Kansas, to accept any of the provisions of the act,

and especially reserved to such corporation all privileges and franchises of its act of incorporation not abandoned in such acceptance. Of this act the defendant corporation accepted the fourteenth section, which provided for the increase of its capital stock, especially reserving all the rights, privileges, and powers of its original charter. The act of 1870 (chapter 92) authorized any railroad company in this state existing under general or special laws to lease its road to any other railroad company, etc. The act of 1878 (chapter 134) amends the act of 1870, above, and enlarges the right to lease, etc., other lines, or to buy said roads, or to buy the stock and bonds thereof when such road shall form a continuous line, etc. This act was specially accepted by the defendant company at a meeting of its stockholders. The act of 1887 (chapter 181) provides that:

"Any railroad company existing under any of the laws of the state or territory of Kansas, may extend its line into other states or territories, or may purchase or lease roads in other states or territories when it forms a continuous line," etc.

Section 3 of the act reads as follows:

"Any railroad company making extensions or purchases under this act may, conformably to the laws of this state, issue stock or bonds or mortgage its property or any part thereof to such extent as may be necessary to meet the cost of such purchase or extension."

The defendant corporation accepted the provisions of this act, and issued an increase of stock thereunder, and it is strenuously insisted by complainant that the acceptance by the defendant corporation of this act of 1887, giving authority to issue stock conformably to the laws of this state, etc., and increasing its stock, invested such stock with the attributes of other corporate stocks, and subjected it to the requirements of the laws of the state, including the cumulative system of voting at meetings of the stockholders. This is undoubtedly the strongest point in support of the plaintiff's contention in this case, and still it rests upon implication alone, and the court is asked to divest the corporation of an admitted vested right on the strength of an implication. This is not favored by the law. The supreme court of the United States, in the case of Chew Heong v. U. S., 112 U. S. 550, 5 Sup. Ct. 255, lays down the rule of law as follows:

"If, by any reasonable construction, the two statutes can stand together, they must so stand. If harmony is impossible, and only in that event, the former law is repealed in part or wholly, as the case may be."

Grand Rapids v. Grand Rapids Hydraulic Co., 66 Mich. 606, 33 N. W. 749; Zabriskie v. Railroad Co., 18 N. J. Eq. 178; State v. Stoll, 17 Wall. 425.

In President, etc., of Rushville v. Town of Rushville, 32 Ill. App. 320, the court uses this language:

"The rules in reference to the repeal by implication are: A statute will never be held to be repealed by implication if it can be avoided on any reasonable hypothesis. A statute will not be repealed by implication unless the subsequent act is so inconsistent and repugnant in its provisions that the two cannot stand together. A general law will not by implication operate as a repeal of a special law on the same subject, though inconsistent with it."

See, also, Butz v. Kerr, 123 Ill. 659, 14 N. E. 671.

In Com. v. Philadelphia & E. R. Co. (decided very recently by the supreme court of Pennsylvania) 30 Atl. 145, we find the rule stated as follows:

"But that a mere general law, without negative words, cannot repeal a previous special statute, although the provisions of the two acts are different, has been so frequently decided that it must be regarded as settled law. In Brown v. Commissioners, 21 Pa. St. 37, we said: 'A general statute, without negative words, cannot repeal a previous statute that is particular, even though the provisions of the one be different from the other.' "

See, also, State v. Archibald (Minn.) 45 N. W. 606.

Plaintiff's counsel contend that the defendant company, by accepting the benefits of this general legislation, ipso facto made a new contract with the state, and cite Monongahela Nav. Co. v. Coon, 6 Pa. St. 379, and Railroad Co. v. Duncan, 111 Pa. St. 361, 5 Atl. 742. These cases do not support the principle as broadly as claimed by the counsel. The navigation company accepted further powers and privileges under a law especially reserving the power to the legislature to alter, amend, or annul the charter, and the court said:

"It is evident that, by accepting additional privileges and powers on the terms prescribed in the grant of them, the company surrendered the inviolability of its contract to the discretion of the legislature."

The case in 111 Pa. St. and 5 Atl. was predicated on the acceptance by the railroad company of an act of the legislature of 1857, authorizing it to build a branch road not included in its original charter of 1846; and, when the corporation accepted the act of 1857, the statutes of Pennsylvania contained a reservation to the legislature to amend, alter, or revoke charters granted to railroad companies; and the court, speaking of the legal effect of such acceptance, uses this language:

"This gave to the Pennsylvania company a new charter, containing all the privileges of that of 1846; and it was under the rights thus conferred that it built, and now operates, the branch in question."

Again, referring to the act of the legislature of 1887, we find the following:

"Sec. 2. This act shall not be construed as repealing any previous act, or as impairing any rights or privileges given or granted thereby."

So far from indicating any intent to repeal or impair any vested rights by this legislation, such purpose is expressly denied. It appears to have been the intention of the act to permit railroad corporations to issue capital stock under any rights then existing under their original charters, and this may be said of other instances of the increase of the stock of this defendant corporation. It would be a waste of time to discuss each enactment above referred to under which the defendant corporation had some right or privilege; but we find all of these enactments commencing with these or equivalent terms:

"Any railroad corporation heretofore organized, or which may hereafter organize, under the laws of the territory or state of Kansas, shall have the right," etc.

There are no terms or conditions imposed in these acts which indicate any intention on the part of the legislature to abrogate any rights, powers, or privileges already enjoyed by these corporations by their acceptance of these acts. It was competent for the legislature, if it saw fit to do so, to make a gift to any existing corporation of lands, rights, powers, or privileges either with or without limitations or conditions. It is written of our first parents that they were tempted and fell, but with the temptation they had the admonition that "in the day that thou eatest thereof thou shalt surely die." No such warning was given with the temptations and benefits offered by these enactments. They appear to be gifts to be had as free as Divine salvation. Charters of corporations are usually *ex gratia*, but they have their compensations. These new states were desirous of enlisting capital in the building of railroads, and thus developing their resources, and increasing their taxable wealth. It is not necessary to decide how far the additional powers given the corporation by these acts may be subject to the control of the legislature by general legislation, under article 12 of the constitution; sufficient for that when the legislature shall undertake to exercise that authority. It was considered and held by the supreme court of Kansas in State v. Missouri Pac. Ry. Co., 33 Kan. 189, 5 Pac. 772, that such additional rights are subject to modification, amendment, or repeal. It must not be supposed that this corporation is in no manner answerable to the laws of the state. Such as affect the remedy only, and those that come under the police power of the state, are as applicable to this corporation as to any other. Stone v. Mississippi, 101 U. S. 816.

For the reasons above given, there is no justification in law for the order of injunction asked for, and it must be denied. It is so ordered, to which order the complainant at the time duly excepted.