ATTORNEY GENERAL, *ex rel.* DUSENBURY, *v.* LOOKER.

1. CORPORATIONS — AMENDMENT OF CHARTER — CONSTITUTIONAL LAW.

    The power reserved to the legislature by the Constitution, article 15, § 1, to amend or alter the charters of corporations, authorizes any reasonable amendment, regulating the mode in which the franchise granted shall be used and enjoyed, which does not defeat or essentially impair the object of the grant, or take away property or rights which have become vested under a legitimate exercise of the powers granted.

2. SAME—VESTED RIGHT—MINORITY OF STOCKHOLDERS—STATUTES.

    A majority of the stockholders of a corporation have no vested right to elect the directors which is infringed by the stockholders' minority law (3 How. Stat. § 4885a), giving the minority of the stockholders the power, by cumulative voting, to elect a representative membership in the board of directors.

3. SAME—QUO WARRANTO.

    *Quo warranto* is the proper remedy by which to try title to the office of director of a private corporation.

*Quo warranto* by the Attorney General, on the relation of Joseph W. and Will J. Dusenbury, against Oscar R. Looker and others, to determine the right of respondents to hold the offices of members of the board of directors of the Michigan Mutual Life Insurance Company. Submitted January 8, 1897. Judgment of ouster entered January 25, 1897.

*Fred A. Maynard*, Attorney General, and *Fred A. Baker*, for relators.

*C. A. Kent*, for respondents.

MOORE, J. This is a proceeding brought to test the validity of the minority of stockholders law.

The Michigan Mutual Life Insurance Company was organized July 3, 1870, under a general law for the incor-

poration of life-insurance companies, approved March 30, 1869. 1 How. Stat. chap. 131. Section 1 of that act provides, among other things, that—

"Any number of persons, not less than 13, may associate together and form an incorporated company, for the purpose of making insurance upon the lives of individuals, and every insurance pertaining thereto, and to grant, purchase, and dispose of annuities."

The next section is, in part, as follows:

"Sec. 2. The persons so associating shall subscribe articles of association, which shall contain  *  *  *  the manner in which the corporate powers are to be exercised; the number of directors and other officers, and the manner of electing the same, and how many of the directors shall constitute a quorum, and the manner of filling all vacancies;  *  *  *  any terms and conditions of membership therein which the corporators may have agreed upon, and which they may deem important to have set forth in such articles."

The articles of association of the Michigan Mutual Life Insurance Company contain the following:

"The corporate powers of the company shall be exercised by a board of directors, which shall consist of 21 members, which may be increased, at the option of the board, to not more than 40.

"The first meeting for the election of directors shall be called by the present officers, and held as soon as practicable after these articles shall take effect.

"No person shall be eligible who is not owner of at least 10 shares of the guaranty capital of the company, and at least two-thirds of the directors shall be residents of the State of Michigan. The board, at their first meeting, shall divide themselves, by lot, into three equal classes, as near as may be, whose terms of office shall expire at the end of one, two, and three years, respectively; and thereafter one-third of the directors shall be chosen annually, for the class whose term then expires, who shall hold office for three years, or until their successors are elected.  *  *  *  They shall be chosen by ballot, and a majority of all the votes cast shall elect. Every shareholder shall be entitled to one vote for directors for every share of guaranty capital standing in his name on the

books of the company, and may vote in person or by proxy. And every policy-holder insured in this company for the period of his natural life, in the sum of not less than $5,000, shall also be entitled to one vote in the annual election of directors, which vote must be given in person.   *   *   *"

From the origin of the company, the directors have been elected according to the provisions of said articles. Relator Joseph W. Dusenbury has been a stockholder from November 15, 1890, and a director from January 27, 1891. He has attended every meeting of the stockholders from and including January 26, 1892, to January 28, 1896. Until the last-named date he has never objected to the election of directors in the manner prescribed by the articles. The terms of nine directors expired in 1896, and notice was given of an election to fill their places. On January 28, 1896, at the stockholders' meeting, relator J. W. Dusenbury claimed the right to vote his stock, and that for which he held proxies, according to the minority representation law. He did not claim that more than nine directors should be then elected. He multiplied the number of shares for which he voted by nine, and voted half of this amount for himself, and half for his brother, Will J. Dusenbury. The stockholders rejected relator's claim, and followed the articles of association, in accordance with which nine directors, who received all the votes, save those of relator Joseph W. Dusenbury, were declared elected. Respondents received each 3,655 votes. Relators, through their multiplication, claim to have received each 5,571 votes.

In 1885 an act was passed which reads:

"An act to secure the minority of stockholders, in corporations organized under general laws, the power of electing a representative membership in boards of directors.

"Section 1. *The People of the State of Michigan enact,* that in all elections for directors of any corporation organized under any general law of this State, other than municipal, every stockholder shall have the right to vote,

in person or by proxy, the number of shares of stock owned by him for as many persons as there may be directors to be elected; or to cumulate said shares, and give one candidate as many votes as will equal the number of directors multiplied by the number of shares of his stock; or to distribute them on the same principle among as many candidates as he shall think fit. All such corporations shall elect their directors annually, and the entire number of directors shall be balloted for at one and the same time, and not separately." 3 How. Stat. § 4885*a*.

The Constitution of Michigan, adopted in 1850, contains the following:

"Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes. All laws passed pursuant to this section may be amended, altered, or repealed." Art. 15, § 1.

It is the claim of the respondents that the power of the majority to elect all the directors, and so fully control the corporation, is a vested and valuable right of property, secured by the Constitution of the United States against the interference of State legislatures or constitutional conventions; citing in support of this proposition *Hays* v. *Com.*, 82 Pa. St. 518; *Baker's Appeal*, 109 Pa. St. 461; *State, ex rel. Haeussler*, v. *Greer*, 78 Mo. 188; *Smith* v. *Railroad Co.*, 64 Fed. 272. In *Hays* v. *Com.*, *supra*, it is true, language of the following tenor was used: "If it be not a vested right in those who own the major part of the stock of a corporation to elect, if they see proper, every member of the board of directors, then I would like to know what a 'vested right' means. This was part of the contract under which they entered into the company, and for which they paid their money,"—and the court cite in support of that proposition the leading case of *Trustees of Dartmouth College* v. *Woodward*, 4 Wheat. 518. It is very generally agreed that the *Dartmouth College Case* would not now apply to a case where the law conferring corporate authority reserved the right to alter, amend, or repeal. The doctrine of the right of the majority of the stockholders to elect the

directors being a vested right was not the point upon which the case of *Hays* v. *Com.*, *supra*, was decided. In that case it was held that the constitutional provision reading, "In all elections for directors or managers of a corporation, each member or shareholder may cast the whole number of his votes for one candidate, or distribute them upon two or more candidates, as he may prefer," did not apply to a corporation in existence at the time the constitutional provision was adopted, and the court say:

"It is manifest that the convention did not intend to subject any private corporation to any of the provisions of the constitution which might in any degree change the charter thereof. If otherwise, why say, in the second section, sixteenth article, 'the general assembly shall not remit the forfeiture of the charter of any corporation now existing, or alter or amend the same, or pass any other general or special law for the benefit of such corporation, except upon the condition that such corporation shall thereafter hold its charter subject to the provisions of this constitution?' This section is so comprehensive and clear that nothing is left for surmise or doubt. Charters of private corporations are left exactly as the new constitution found them, and so they must remain until the companies holding them shall enter into a new contract with the State, by accepting the benefit of some future legislation. It is only on the theory that the manner of voting is not material that the cumulative system is sought to be saddled on this corporation; but, if this company does not hold its charter subject to the provisions of the present constitution, how can it be made subject to any one of such provisions, material or immaterial? It is, indeed, manifest that such an argument is foreign to the question in hand. It might apply to a legislative enactment attempting to alter this charter, but it cannot apply to this case, arising, as it does, directly on the constitution itself, for it is excluded by the very terms of that instrument."

The case of *Baker's Appeal*, 109 Pa. St. 461, was a proceeding to determine whether the American Academy of Music was brought within the provisions of the constitution providing for cumulative voting, by accepting its

provisions in the manner indicated by law. It was held, "If, at a meeting duly called for that purpose, a majority, not in number, but in interest, of the stockholders present thereat in person or by proxy, authorizes such acceptance, then, and not till then, can the holders of the major part of the capital stock be stripped of their vested right to elect a full board of directors, all of their own selection;" the court accepting the view expressed in *Hays* v. *Com.*, that the constitutional provision permitting cumulative voting was not intended to, and did not, apply to corporations in existence, unless accepted by them.

In the case of *State, ex rel. Haeussler,* v. *Greer,* 78 Mo. 188, it was held that the right of corporators to vote at elections for directors was a property right, and that a provision of law providing for cumulative voting would not apply to a corporation which held its charter from the legislature, where the charter provided that each stockholder should have one vote for each share of stock, and that the directors should be elected by vote of the stockholders, and contained the further provision that the legislature should have no power to alter, suspend, or repeal the charter. It was further held that, if the mode of voting is prescribed by an irrepealable charter, it is protected by that provision of the Constitution of the United States which prohibits the States from passing laws impairing the obligation of contracts.

In the case of *Smith* v. *Railroad Co.*, 64 Fed. 272, it was held that a law passed in 1876 providing for cumulative voting would not apply to a corporation obtaining its charter while Kansas was a territory, though the constitution adopted when Kansas became a State contained a provision providing for the amendment and repeal of acts conferring corporate powers. The constitution had a provision that "all laws and parts of laws in force in the territory * * * shall continue and remain in full force until they expire or shall be repealed." The territorial statute in force when the charter was granted contained the following provision: "The charter of every

corporation that shall hereafter be granted by law shall be subject to alteration, suspension, or repeal by any succeeding legislature: *Provided*, such alteration, suspension, or repeal shall in no wise conflict with any right vested in such corporation by its charter." The court said:

"Whether or not this act was in force at the time the defendant's charter was granted it is not necessary to decide, as the proviso in this section has extracted the meat, and left only the shell."

The case of *City of Detroit* v. *Detroit, etc., Plank-Road Co.*, 43 Mich. 140, was a case where a charter had been accepted by a corporation which had built a plank road and erected toll gates. It was sought, by an amendment, to require the company to remove a toll gate, and to vacate that portion of its road then within the city of Detroit, without compensation. In an opinion written by Justice COOLEY it was held that "the effect of the proposed amendment, if valid, would be to take from the corporation about two miles and a half of the road upon which it collected toll, and that the legislature cannot, under its power to amend a charter, take from the corporation any of its substantial property; * * * that, if the State may deprive the corporation of the right to take tolls on two miles and a half of its road, it may in respect to any other part, and * * * may annihilate the property of the corporation altogether; and that a statute which could have this effect would not be a statute to amend franchises, but a statute to confiscate property. It would not be a statute of regulation, but of spoliation."

We do not think any of these cases, when analyzed, go so far as to sustain the claim of counsel for respondents. It is claimed by the counsel that the method of electing the directors of the Michigan Mutual Life Insurance Company was made in pursuance of the statute, and constitutes a contract between the stockholders of the company, which the legislature cannot set aside; and it is asserted that the minority stockholders' law changes the contract

between the stockholders, and is therefore within the constitutional provision which forbids impairing the obligation of contracts.   It would seem to be a complete reply to this view to say that the stockholders knew when they entered this corporation that the Constitution reserved to the legislature the right to amend, alter, or repeal the law under which the corporation was organized. 1 Thomp. Corp. § 89.   The stockholders are as much bound by this constitutional provision as though it were contained in the articles of incorporation.   *Parker* v. *Railroad Co.*, 109 Mass. 506.   In this case it was said:

"Many cases have arisen in this court involving the construction and application of the power to amend or alter charters.   The reservation of power is broad and comprehensive.   Whatever may be its limitation, it at least reserves to the legislature the right to make any reasonable amendments, regulating the mode in which the franchise granted shall be used and enjoyed, which do not defeat or essentially impair the object of the grant, or take away any property or rights which have become vested under a legitimate exercise of the powers granted."

See, also, *South Bay Meadow Dam Co.* v. *Gray*, 30 Me. 547; *Shields* v. *Ohio*, 95 U. S. 324.

In the case of *Hamilton Gaslight & Coke Co.* v. *Hamilton City*, 146 U. S. 270, it was held, in an opinion written by Justice Harlan:

"A legislative grant to a corporation of special privileges, if not forbidden by the constitution, may be a contract; but, where one of the conditions of the grant is that the legislature may alter or revoke it, a law altering or revoking, or which has the effect to alter or revoke, the exclusive character of such privileges, cannot be regarded as one impairing the obligation of the contract, whatever may be the motive of the legislature, or however harshly such legislation may operate, in the particular case, upon the corporation or parties affected by it. The corporation, by accepting the grant subject to the legislative power so reserved by the constitution, must be held to have assented to such reservation."

See, also, *Greenwood* v. *Freight Co.*, 105 U. S. 13, which is a very interesting case, containing a full discussion of this subject.

In *Market Street R. Co.* v. *Hellman*, 109 Cal. 571, it was held that, when an individual becomes a stockholder in a corporation, it is with the implied assent on his part to the right of the legislature to alter and amend the law, within the scope of the constitutional provision, and is as binding upon him as a contract to the like effect of his own making would be. This was a case providing for the consolidation of corporations by a majority of the stockholders, without regard to the desire of stockholders opposing the consolidation.

In *Railroad Co.* v. *Georgia*, 98 U. S. 359, it was held that a corporation held the rights granted to it under and subject to the law as it was when the new charter was granted, and that where the law in existence when the corporate franchise was granted provided that the franchise was "subject to be changed, modified, or destroyed at the will of the creator," the franchise was held subject to these provisions.

We understand the rule in relation to the reservation of power to amend, alter, or repeal to be correctly stated in *Parker* v. *Railroad Co.*, already quoted; and, as stated by Justice Gray in *Commissioners on Inland Fisheries* v. *Holyoke Water-Power Co.*, 104 Mass. 446 (6 Am. Rep. 247): "A power reserved to the legislature to alter, amend, or repeal a charter authorizes it to make any alteration or amendment of a charter granted subject to it which will not defeat or substantially impair the object of the grant, or any rights vested under it, and which the legislature may deem necessary to secure either that object or any public right." See, also, *Sinking Fund Cases*, 99 U. S. 700.

The nature of a corporation is therefore an important consideration in determining the extent of the reserved right of the State to alter or amend its charter. Is it a corporation in which the public is interested? If so, the

legislature may exercise the reserved power as just stated. Is not the public interested in the proper control and management of great life-insurance companies, like the Michigan Mutual Life Insurance Company? Is it not true that their incomes are largely drawn from the public, and that the proper or improper management of the company's affairs affects the public as well as the stockholders? Is it not true that the policy-holders of the company are quite as much interested in what becomes of the assets of the company as the stockholders themselves? The answer to each of these questions must be in the affirmative. For cases in which the power to alter, amend, or repeal charters or acts of incorporation has been exercised, see *Fitchburg R. Co.* v. *Grand Junction R. Co.*, 4 Allen, 198; *Durfee* v. *Railroad Co.*, 5 Allen, 230; *Roxbury* v. *Railroad Corp.*, 6 Cush. 424; *Massachusetts Gen. Hospital* v. *Assurance Co.*, 4 Gray, 227; *Com.* v. *Eastern R. Co.*, 103 Mass. 254 (4 Am. Rep. 555); *Commissioners on Inland Fisheries* v. *Holyoke Water-Power Co.*, 104 Mass. 446 (6 Am. Rep. 247); *Mayor, etc., of Worcester* v. *Railroad Co.*, 109 Mass. 103; *Parker* v. *Railroad Co.*, Id. 506; *Pennsylvania College Cases*, 13 Wall. 190; *Holyoke Co.* v. *Lyman*, 15 Wall. 500; *Oldtown, etc., R. Co.* v. *Veazie*, 39 Me. 581; *Boston & Albany R. Co.* v. *Village of Greenbush*, 5 Lans. 461; *Schenectady, etc., Plank-Road Co.* v. *Thatcher*, 11 N. Y. 102; *Buffalo, etc., R. Co.* v. *Dudley*, 14 N. Y. 336; *In re Lee & Co.'s Bank*, 21 N. Y. 9; *Albany Northern R. Co.* v. *Brownell*, 24 N. Y. 345; *Northern R. Co.* v. *Miller*, 10 Barb. 260; *White* v. *Railroad Co.*, 14 Barb. 559; *Hyatt* v. *McMahon*, 25 Barb. 457; *Anderson* v. *Com.*, 18 Grat. 295; *Joslyn* v. *Steamship Co.*, 12 Abb. Pr. (N. S.) 329; *Sherman* v. *Smith*, 1 Black, 587; *Perrin* v. *Oliver*, 1 Minn. 202; *Iron City Bank* v. *Pittsburgh*, 37 Pa. St. 340; *Com.* v. *Fayette County R. Co.*, 55 Pa. St. 452; *Shields* v. *Ohio*, 95 U. S. 324; *Maine Cent. R. Co.* v. *Maine*, 96 U. S. 510; *Greenwood* v. *Freight Co.*, 105 U. S. 13; *Close* v.

*Glenwood Cemetery*, 107 U. S. 466; *Spring Valley Waterworks* v. *Schottler*, 110 U. S. 348; *Hamilton Gaslight & Coke Co.* v. *Hamilton City*, 146 U. S. 258; *Bissell* v. *Heath*, 98 Mich. 472.

We do not think it can be said that the minority law changes the character of the business in which the Michigan Mutual Life Insurance Company is engaged, or that it takes away any substantial right acquired by the corporation. It changes the terms of office of the directors, and provides for a representation on the board of directors of a minority of the stockholders. We do not think this disturbs any vested right such as is referred to by the cases cited by counsel for respondents (see *Miller* v. *State*, 15 Wall. 478), and that the minority law is constitutional.

It is objected that *quo warranto* is not the remedy. *Quo warranto* was brought in many of the cases cited. *State, ex rel. Haeussler,* v. *Greer, supra; Hays* v. *Com., supra.* And we think it the proper remedy. *Frey* v. *Michie*, 68 Mich. 323.

The relators were elected as directors, and should have been so declared. In view of the fact that the annual meeting of the stockholders will be held so soon, it will not be necessary to make any further order in the proceeding. Costs are given to relators.

The other Justices concurred.