COMMISSIONER OF RAILROADS *v.* GRAND RAPIDS & INDIANA RAILWAY CO.

1. CORPORATIONS—RIGHTS AND DUTIES.

Corporations cannot avail themselves of the provisions of the law giving them the right to do business, and disregard the onerous provisions of the law.

2. RAILROADS—RATES OF FARE.

A railroad company organized in 1896 under the general law is bound by paragraph 9, section 9 (2 Comp. Laws, § 6234), fix-

ing the rate of fare at 2½ cents per mile where the passenger trains earn more than $2,000 per mile, though such rate be unreasonable and inadequate.

3. SAME—FORECLOSURE—REORGANIZATION.

Purchasers at a foreclosure sale of a railroad, who organize a corporation under section 6224, 2 Comp. Laws, securing to them the same rights, powers, and privileges as the original company had, subject to all the provisions of said act and amendments thereto, are subject to the amendment of 1889 (2 Comp. Laws, § 6234, par. 9) reducing the rate of fare to 2½ cents per mile, though the mortgage was given before said amendment was enacted.

4. SAME — CONSTITUTIONAL LAW — IMPAIRMENT OF PROPERTY RIGHTS.

The amendment of 1889, taking from the bondholders, in case of the foreclosure of a mortgage, the right to reorganize except upon condition of submission to the rates of fare fixed therein, is not unconstitutional as impairing the obligations and property rights secured by a mortgage made prior to said amendment, as the purchasers would be able to manage the road without reorganization, and the amendment affects the remedy merely.

*Certiorari* to Kent; Wolcott, J. Submitted December 10, 1901. (Docket No. 219.) Decided April 8, 1902.

*Mandamus* by Chase S. Osborn, commissioner of railroads, to compel the Grand Rapids & Indiana Railway Company to reduce its rate of fare. From an order granting the writ, respondent brings *certiorari*. Affirmed.

*Horace M. Oren*, Attorney General (*Roger Irving Wykes*, of counsel), for relator.

*T. J. O'Brien* and *James H. Campbell*, for respondent.

MONTGOMERY, J. This is *certiorari* to review proceedings of the circuit court in which a *mandamus* was issued requiring respondent to reduce its fare. It appears that the respondent was organized as a corporation on the 15th of July, 1896, under the railway law then in

force, which, in paragraph 9 of section 9 (2 Comp. Laws, § 6234), fixes the rate of fare of railroad companies whose passenger trains earn more than $2,000 per mile at 2½ cents per mile. The respondent comes within this provision. The respondent company was organized, however, by purchasers of the property of the Grand Rapids & Indiana Railroad Company, on foreclosure of a mortgage given on the 1st day of August, 1884. At the time this mortgage was given, the only limitation on the power to fix rates of fare was that it should not exceed three cents per mile. It is the respondent's contention that under 2 Comp. Laws, § 6224, being section 2 of the railway act, it succeeded to all the rights and privileges of the Grand Rapids & Indiana Railroad Company. The answer states that the rate of fare of 2½ cents per mile is unreasonable and inadequate, and, as this statement is admitted by demurrer to the answer, it is the respondent's contention that such a provision would be invalid as against the original railroad company, and that, as the respondent has succeeded to the rights of the railroad company, it is equally invalid as to it.

The contention that a statute fixing unreasonable rates would constitute an impairment of the property rights of the old company, is based upon numerous decisions of the federal supreme court and of this court. The subject was discussed in *Smith* v. *Railway Co.*, 114 Mich. 460 (72 N. W. 328), and the rule was recognized in both opinions in that case that legislation, the effect of which is to deprive a corporation of its property, cannot be sustained under the power to alter, amend, or repeal. See, also, *Attorney General* v. *Looker*, 111 Mich. 498 (69 N. W. 929); *City of Detroit* v. *Plank-Road Co.*, 43 Mich. 140 (5 N. W. 275). And that the fixing of unreasonable rates is an infringement of the property rights of an existing corporation, within the meaning of the fourteenth amendment, appears to have been determined by the federal supreme court in *Chicago, etc., R. Co.* v. *Wellman*, 143 U. S. 339 (12 Sup. Ct. 400); *Reagan* v *Trust Co.*, 154 U. S. 362

(14 Sup. Ct. 1047); *Covington, etc., Turnpike Road Co.* v. *Sandford,* 164 U. S. 578 (17 Sup. Ct. 198); *Chicago, etc., R. Co.* v. *Minnesota,* 134 U. S. 418 (10 Sup. Ct. 702); and *Lake Shore, etc., R. Co.* v. *Smith,* 173 U. S. 684 (19 Sup. Ct. 565). The question in this case, however, is whether the defendant corporation stands in the same position in this respect as would the original company have occupied had there been no foreclosure. The briefs contain an elaborate discussion of the question as to how far, and in what respect, a charter, or a law authorizing an incorporation, is a contract. We do not find it necessary to discuss this question at length, for, in our view, it cannot admit of doubt that corporations formed under an existing law will not be heard to question the rates fixed by the statute. They cannot avail themselves of the provisions of the law which give them the right to do business, and disregard those provisions which are onerous. This was the view taken by this court in *Jackson & Suburban Traction Co.* v. *Commissioner of Railroads,* 128 Mich. 164 (87 N. W. 133), and has the support of authority in other jurisdictions. See 4 Thomp. Corp. § 5257, and cases cited. The case turns upon the question of whether the respondent is in position to insist that it occupies precisely the same ground that the former corporation would but for the foreclosure.

2 Comp. Laws, § 6224, provides that:

"In case of the foreclosure and sale of any railroad, or part of any railroad, under any trust deed or mortgage, * * * it shall be competent and lawful for the parties who may become the purchasers, and such others as they may associate with themselves, to organize a corporation for the management of the same, and issue stock in the same in shares of one hundred dollars each, to represent the property in said railroad; *and such corporation, when organized, shall have the same rights, powers, and privileges as are or may be secured to the original company whose property may have been sold under and by virtue of such mortgage or trust deed.*"

The section then provides for a declaration or certificate

of the purchasers at the sale, setting forth the description of the property, etc., the amount paid, and the stockholders to whom stock is to be issued, which shall be addressed to the secretary of State, and proceeds:

"And, being filed and recorded in his office, the said corporation shall become complete, *with all the powers and rights secured to railroad companies under this act, to all the provisions of which, and amendments thereto, it shall be subject.*"

When the mortgage in question was given, the section fixing the rates contained no limitation except that they should not exceed three cents per mile. It is contended that the legislature could not, by the amendment of 1889, enacted after the mortgage was made, withdraw from the bondholders the right to reorganize except on condition of submitting to the rates fixed by the statute. This question would seem to depend upon whether the legislation affected the bondholders' remedy simply, or affected the right of property. It may be urged with some force that, if the legislature might prohibit any incorporation except on the terms of acceptance of unreasonable rates, the bondholders would be remediless, and that the right to reorganize is, in effect, a part of the mortgage contract, and that the rights and franchises of the debtor corporation vest in the purchaser on reorganization. If this view be adopted, and particularly if it be said that the purchaser could not, except through the instrumentality of a corporation, conduct the business of the corporation, it would be difficult to say that the amendment affects the remedy merely. Its effect would be, under such construction, to cut off the remedy, *pro tanto* at least; and, if the rates are so far unreasonable as to make the operation of the road a burden, the effect would be to cut off the remedy wholly, thus rendering the franchise valueless. This would be beyond the power of the legislature. *Mundy* v. *Monroe*, 1 Mich. 68; *Cargill* v. *Power, Id.* 369.

But is this the effect of the amendment? May it not be said that the rights and property of this corporation vested

in the purchaser upon the foreclosure sale, and that, independent of any express statutory authority to operate, the purchaser was authorized to maintain his property rights, and to operate this railroad in accordance with the franchise of the original company, and under precisely the same conditions? If this be so, the authority to incorporate was not essentially a part of the property right, but was a privilege granted by the State, which might be withdrawn. This latter view is enforced by the fact that, under the Constitution, the legislature possessed the power to alter, amend, or repeal this statute; and by the further fact that under section 2, as it has always existed, the right to reorganize by the purchaser at a foreclosure sale was limited by the provision that the corporation should be vested with the powers and rights secured to railroad companies under the act, *to all the provisions of which, and the amendments thereto, it should be subject.* More than this, the legislature possessed the power, under the Constitution, to repeal the statute. It could do this one day before the reorganization, or the next day after. While, by this means, it could not cut off the mortgage, or devest the mortgagee of his property rights, it could deprive him of the *power of reorganization.*

We think the legislation was not unconstitutional, and the order of the circuit court is affirmed, with costs.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.